646 S.E.2d 872

**The STATE, Respondent,**

v.

**Steve GILLIAN, Petitioner.**

No. 26342.

Supreme Court of South Carolina.

Heard April 4, 2007.

Decided June 11, 2007.

602

Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of South Carolina Commission on Indigent Defense, of Columbia, for petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh.

Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody J. Brown, of Columbia, and Solicitor Warren Blair Giese, of Columbia, for respondent.

Justice MOORE.

Petitioner was convicted of murder and sentenced to life imprisonment without parole. The Court of Appeals affirmed. *State v. Gillian*, 360 S.C. 433, 602 S.E.2d 62 (Ct.App.2004). We now affirm as modified.

## FACTS

The body of the victim, Jason Ward, was found about 8:30 a.m. on January 28, 2001, behind the Boozer Shopping Center.

Richland County police investigated Ward's death initially by tracing his activities in the days leading up to his death. The police determined Ward was with petitioner from approximately midnight on January 28 until his death.

Around midnight, petitioner, Jeremiah Page, and several friends, most of whom had been drinking, met at Michael Glenn's home. Shortly after arriving at Glenn's home, petitioner left and brought Ward back to the party. Subsequently, petitioner and Ward left the party and drove to the apartment of one of Ward's co-workers.

After petitioner and Ward left the party, Page acted violently and was forcefully removed from the house. Once he calmed down outside, Page asked if he could reenter the residence and use the phone to secure a ride home. Once inside, Page telephoned petitioner and informed him of the previous altercation. Petitioner and Ward returned to the party at the Glenn residence approximately ten minutes after petitioner spoke with Page.

Upon arriving at the Glenn residence, petitioner physically attacked at least four people, including breaking one person's nose by head-butting him. Petitioner demanded to see the two men who had thrown Page out of Glenn's house. He asked the men why they attacked Page and threatened to beat them up for attacking Page. After questioning them, petitioner turned his anger upon Page for misleading him. Petitioner beat Page, who was crying and trying to cover his face.

At this point, Ward, who had been sitting quietly at the kitchen table, confronted petitioner about his behavior. A guest at the party testified Ward stated: "Why are you messing with these kids, man? They are scared of you. They don't want to fight you." Petitioner then directed his anger toward Ward, who calmly refused to fight petitioner despite several minutes of attempted instigation and taunting. Ward eventually responded to petitioner's threats by quickly punching him a few times and pinning him to the floor. After petitioner agreed to calm down, Ward allowed him to stand up, but the threats continued.

Around 5:30 a.m., Ward agreed to leave the party with petitioner, despite another party guest warning Ward not to

leave with petitioner. Before leaving, petitioner stated, "You will see this in the newspaper tomorrow."

Around 6:30 a.m., residents of an area close to the Boozer Shopping Center heard gunshots. Ward's body was later found behind the shopping center, with four bullet wounds to the head and one to the neck. The wounds were caused by .38 caliber copper-jacketed bullets. Markings on the recovered bullets were consistent with bullets fired from a .38 caliber handgun manufactured by the Taurus Company, as well as seven other manufacturers. The murder weapon was never recovered.

Petitioner arrived at his parents' home around 8:30 a.m. on Sunday morning and entered his brother's bedroom. Petitioner confessed to his brother that he had shot Ward several times and that he did not feel remorse. He told his brother to watch the news because the murder would be on the news.

Around 9:00 a.m., petitioner walked over to his cousin's house. The cousin testified petitioner, who was drunk, told him he had gone to a party and beat up several people. Petitioner also told him he killed someone, explaining that he lured the victim behind the jewelry store he had once robbed under the guise of showing the victim how he broke into the store. He told his cousin he might see it in the newspaper.

Dems Jewelry Store, in the Boozer Shopping Center, reported a break-in and a resulting loss of 34 women's Tag Heuer watches in July of 2000. Steven Livingston, the owner and manager of the jewelry store, testified as to the details of the break-in. Page and petitioner's cousin stated that petitioner had previously told them that he had robbed a jewelry store and had taken several watches. Another witness, Dustin Johnson, testified that upon petitioner's directions he had pawned twelve Tag Heuer watches.

The weapon that killed Ward was never found. However, in investigating petitioner's connection to Ward's death, officers linked petitioner and five men to a residential burglary in Lexington County. All five of the men testified at trial as to the details of the burglary, and the testimonies of all five men were essentially in accordance with one another. The solicitor also presented testimony from Kevin Collins, the detective with the Lexington County Sheriff's Department who investi-

gated the robbery, and from the resident, Ronnie Muller. The purpose of the testimony was to place the alleged murder weapon in the hands of petitioner around the time of the murder.

Testimony revealed petitioner planned the burglary which took place on January 26, 2001. Petitioner obtained a map of the inside of the home and copied keys that allowed entry to the home.[1] Petitioner recruited the five men to actually enter the house for him. While the five men entered the home, petitioner waited at a nearby gas station. A five shot Taurus .38 caliber revolver was one of the items taken from the home.

The men met petitioner following the burglary. Petitioner was furious at the group's failure to steal any items of value. However, Page testified petitioner was enthusiastic about the theft of the gun, which he placed in his car, stating he intended to use it to "do some dirt." One participant, Jessie Boot, testified the gun was a black revolver with a brown handle. Another participant, David Grice, testified the gun was a brown-handled, black metal .38 that said Taurus on it. Petitioner, along with a few of the men, then returned to the home to steal additional items, some of which were taken to a wooded area near petitioner's parents' home. Several of the men testified they saw petitioner place the gun in a brown paper bag and place it inside his car.

The following day, petitioner contacted an associate in the music industry to purchase bullets for the gun, but the man refused. Thereafter, Dustin Johnson reluctantly agreed to purchase the bullets from a local Wal–Mart. Both Johnson and petitioner were identified on store security video purchasing the bullets on January 27.

Prior to the start of the trial, defense counsel moved to have evidence of the two burglaries excluded under Rules 403 and 404(b), SCRE, and under *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). The trial judge ruled evidence of the burglaries was admissible. Before the residential burglary testimony began, the trial judge issued a limiting instruction to the jury that they could consider the evidence for intent and identity, but not as a comment on petitioner's character. At the close

---

1. There is a Walmart video showing petitioner and Page having the keys copied.

of the State's evidence, defense counsel's motion for a mistrial based on the prior bad act evidence regarding the residential burglary was denied.

## ISSUES

I. Did the Court of Appeals err by upholding the trial court's decision to admit evidence of two prior burglaries committed by petitioner?

II. Did the Court of Appeals err by upholding the trial court's decision not to admit evidence of a police ruse designed to coerce petitioner into confessing?

## DISCUSSION

### I. Evidence of Prior Burglaries

█ Regarding both burglaries, the Court of Appeals held that evidence of the Dems jewelry store burglary and the residential burglary was admissible under the *res gestae* theory.

We find the Court of Appeals erred because neither burglary furnishes part of the context of the crime nor are they necessary for a full presentation of the case. *See State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996) (one of the accepted bases for the admissibility of evidence of other crimes arises when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case). Neither burglary is needed to complete the story of the crime of murder. *See id.* (evidence of other crimes is admissible where that evidence is needed to complete the story of the crime on trial by proving its immediate context or the *res gestae*). Accordingly, the Court of Appeals erred by finding the evidence of both burglaries was admissible as part of the *res gestae* of Ward's murder. *See, e.g., State v. Beck*, 342 S.C. 129, 536 S.E.2d 679 (2000) (evidence of an escort's assault and robbery is not admissible as part of the *res gestae* of the murder of another escort because the murder occurred nearly two days after the assault and robbery; further, the crimes were not so intertwined that one cannot be proven without mention of the other).

The Court of Appeals also found the State presented clear and convincing evidence that petitioner committed the burglaries. The Court of Appeals further found the evidence was admissible as tending to establish petitioner's identity as Ward's murderer pursuant to Rule 404(b), SCRE.

■ Evidence of other crimes is not admissible to prove the character of a person in order to show action in conformity therewith. Rule 404(b), SCRE. The evidence may, however, be admissible to show identity. *Id.* If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing. *State v. Pagan,* 369 S.C. 201, 631 S.E.2d 262 (2006).

### A. *Evidence of Dems jewelry store burglary*

■ The Dems burglary evidence is clear and convincing and falls into the identity exception. The evidence served to show the identity of the murderer given petitioner's confession to his cousin that he lured the victim behind the jewelry store he had once robbed and given that Ward's body was found in the vicinity of the Dems store. Consequently, evidence regarding the Dems burglary was relevant and probative on the issue of identity. *See, e.g., State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990) (by his own actions, Bell linked the two murders together and consequently the evidence of the taped telephone conversations between Bell and the victim's family was probative of his conduct).

■ Although the evidence is admissible to show identity, it must also be determined whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* Rule 403, SCRE (although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice). The determination of the prejudicial effect of the evidence must be based on the entire record and the result will generally turn on the facts of each case. *State v. Bell,* 302 S.C. 18, 393 S.E.2d 364, *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 182 (1990).

■ The amount of evidence regarding the specifics of the Dems burglary was unnecessary. We find, however, that

the admission of the evidence was harmless given that petitioner's guilt has been proven by competent evidence such that no other rational conclusion can be reached. *See State v. Bailey*, 298 S.C. 1, 377 S.E.2d 581 (1989) (insubstantial error not affecting the result of the trial is harmless where guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached); *see also State v. Sherard*, 303 S.C. 172, 399 S.E.2d 595 (1991) (appellate courts will generally not set aside convictions due to insubstantial errors not affecting the result).

Other competent evidence established petitioner's guilt beyond a reasonable doubt. There was ample testimony regarding petitioner's altercation with Ward and his veiled threat towards Ward only hours before the murder. The evidence also showed that petitioner was the last one seen with Ward immediately prior to the murder and that he confessed the murder to his brother and cousin. Therefore, although the quantity of testimony about the Dems burglary was inappropriate, any error in allowing the evidence was harmless.

## B. *Evidence of the residential burglary*

Evidence that petitioner was involved in the residential burglary was clear and convincing. Several witnesses were able to testify to his involvement. Further, petitioner conceded the evidence was clear and convincing.

The burglary evidence was presented in an effort to show the identity of the perpetrator by showing that petitioner was in possession of a stolen gun that was consistent with the type of weapon used to kill the victim. The evidence showed petitioner placed the stolen .38 caliber Taurus five-shot revolver in his car and later purchased .38 caliber bullets. Other evidence showed that the victim had been shot five times and that the recovered bullets were consistent with those fired by a Taurus revolver. Accordingly, the evidence was properly admissible to show identity. *See State v. Southerland*, 316 S.C. 377, 447 S.E.2d 862 (1994)[2] (evidence that Southerland stole the shotgun used to kill the victim from a trailer two weeks before the murder and that he traded the shotgun for

---

2. *Cert. denied,* 513 U.S. 1166, 115 S.Ct. 1136, 130 L.Ed.2d 1096 (1995).

drugs the day after the murder was admissible to prove identity).

■ However, even if prior bad act evidence is clear and convincing and falls within an exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *State v. Pagan, supra.* Proving the identity of petitioner as the perpetrator was an important issue in the trial. Allowing the State to present evidence of the burglary in an effort to show the alleged murder weapon was in petitioner's hands immediately prior to the murder was highly probative.

■ We find, however, that the trial court should have limited the quantity of the evidence presented about the burglary. Not all of the evidence was necessary. For example, one of the State's witnesses, Dustin Johnson, testified about the burglary but did not testify that he saw a gun stolen from the house or that petitioner had the gun around the time of the burglary. Another witness, Brandon Cannon, did not give a description of the gun. Accordingly, the State did not need Cannon's or Johnson's testimony about the burglary in their effort to show petitioner was in possession of the type of gun that was used in the murder.

Further, there was an extensive amount of evidence presented about the burglary that was unrelated to the gun; for instance: what other items were stolen, where other stolen items were discarded, the fact petitioner led the others in committing the burglary, and the fact petitioner ransacked the house after learning the others did not find money on their first visit. Considering the volume of the testimony about the residential burglary, petitioner was prejudiced by the admission of that amount of extraneous testimony.

■ However, we conclude the admission of the extraneous evidence was harmless given that petitioner's guilt has been proven by competent evidence such that no other rational conclusion can be reached. *See State v. Bailey, supra.* Although the trial court erroneously allowed the State to provide extraneous testimony about the burglary, other competent evidence, as previously discussed, established petitioner's guilt beyond a reasonable doubt. Therefore, the court's

error in allowing the extraneous burglary evidence was harmless. *See State v. Bailey, supra; State v. Sherard, supra.*

## II. Evidence of the police ruse

At trial, defense counsel was not allowed to elicit testimony from Lieutenant Smith about a ruse the police used in an attempt to convince petitioner to confess to the crime. In testimony proffered outside the jury's presence, Smith admitted police falsified aerial photographs to show petitioner's vehicle at the rear of the Boozer Shopping Center around the time of the shooting. The ruse was used in an interview with petitioner to obtain a confession; however, petitioner did not confess.

Defense counsel also attempted to show during the proffered testimony that Smith omitted details of the ruse from his report on the investigation. Defense counsel argued this information should have been presented to the jury both to show the lack of confidence the police had in their case and the possible lack of integrity in the investigation based on lack of documentation of the ruse. The trial judge ruled evidence of the ruse was not relevant because there was no other indication the State had manufactured other evidence or done anything else improper. The judge further ruled that the admission of the evidence would confuse the jury because there were no "fruits" obtained from the ruse. The Court of Appeals found the trial judge did not err by refusing to admit the evidence.

Evidence is relevant if it tends to make more or less probable a fact in issue. Rule 401, SCRE; *State v. Huggins,* 336 S.C. 200, 519 S.E.2d 574 (1999).[3] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Rule 403, SCRE. The relevancy of evidence is an issue within the trial judge's discretion. *State v. Huggins, supra.*

There is no abuse of discretion here. Evidence that the ruse failed to elicit a confession is not relevant to the circumstances of Ward's death. It is also not relevant because

---

**3.** *Cert. denied,* 528 U.S. 1172, 120 S.Ct. 1199, 145 L.Ed.2d 1103 (2000).

there is no suggestion by petitioner that the State manufactured any evidence or engaged in any other improprieties in investigating the case. Therefore, the Court of Appeals correctly ruled that the trial judge properly excluded the evidence.

Petitioner argues that, pursuant to *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), and *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689, *cert. denied*, 519 U.S. 972, 117 S.Ct. 402, 136 L.Ed.2d 316 (1996), evidence of the ruse should have been admitted so that the jury could have considered how it reflected on the strength of the State's case. The Court of Appeals properly found that these cases are inapplicable because they involve determining whether a confession was voluntarily given after examining all the circumstances surrounding the confession. Here, there is no confession and no statements for the jury to determine how they were given and if they were voluntary.

Accordingly, the trial judge properly excluded testimony regarding the ruse. *See State v. Douglas*, 369 S.C. 424, 632 S.E.2d 845 (2006) (the admission or exclusion of evidence is a matter addressed to the trial court's sound discretion and its ruling will not be disturbed in the absence of a manifest abuse of discretion accompanied by probable prejudice).

## CONCLUSION

We find the Court of Appeals erred by holding evidence of the burglaries was admissible as *res gestae* evidence. Regarding both burglaries, we find the evidence was probative to the issue of identity; however, the amount of evidence should have been limited by the trial judge. Given the overwhelming evidence of guilt, however, the admission of the extraneous evidence regarding the burglaries was harmless error. We further hold the trial judge properly excluded testimony regarding the ruse the police used in an effort to obtain petitioner's confession. Accordingly, the decision of the Court of Appeals is

**AFFIRMED AS MODIFIED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.