659 S.E.2d 268

**The STATE, Respondent,**

v.

**Virgil Lee CULBREATH, Appellant.**

**No. 4359.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2008.

Decided March 18, 2008.

---

**1.** We decide this case without oral argument pursuant to Rule 215, SCACR.

Tommy A. Thomas and Tricia A. Blanchette, of Irmo, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Deborah R.J. Shupe, Office of the Attorney General, of Columbia, and Solicitor Donald V. Myers, of Lexington, for Respondent.

PIEPER, J.:

Virgil Lee Culbreath appeals from his conviction for trafficking of crack cocaine, asserting the trial judge erred in denying Culbreath's motion for a mistrial after the State's witness mentioned prior drug dealings with Culbreath. We affirm.[1]

## FACTS

Culbreath was indicted in 2004 on one count of trafficking crack cocaine and one count of distribution of crack cocaine within the proximity of a school or park. Both counts arose from an April 30, 2004 controlled sale to a confidential informant.

At trial, the State called the confidential informant, Kontay Gaines as a witness. Gaines testified he had been arrested several times for selling drugs and incarcerated twice. Gaines further stated that after he was arrested in November 2003, he told law enforcement officials he could buy drugs from Culbreath.[2] The solicitor then asked Gaines how he knew Culbreath but instructed him not to talk about any business transactions. Culbreath's counsel moved for a mistrial, contending the term "business transactions" inferred drug transactions. The trial court denied the motion. Before the jury returned to the courtroom, the solicitor specifically instructed Gaines not to talk about any prior drug transactions with Culbreath.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Culbreath did not object to this testimony.

During direct examination Gaines testified he met Culbreath in 1994 and that Culbreath dated his stepsister. Gaines proceeded to detail the April 30, 2004 controlled sale from Culbreath. Gaines explained he met with law enforcement officers at the airport where the officers searched Gaines and his vehicle. The officers provided Gaines with $3000 and a beeper. Gaines went to Culbreath's residence and arranged to purchase three ounces of crack cocaine for $3000. Once Gaines left Culbreath's residence, the officers contacted Gaines and instructed him to meet them at a nearby church. The officers searched Gaines and the vehicle, and changed the battery in the beeper. Gaines then drove to a restaurant parking lot to wait for Culbreath's call.

Culbreath pulled up next to Gaines in the parking lot and told Gaines to follow him. Gaines followed Culbreath to a house in Edgefield. Once inside Culbreath explained he could not get the three ounces Gaines wanted but gave Gaines a paper bag containing two ounces of crack cocaine. Gaines paid Culbreath $2000, left the house, and drove to a prearranged location to meet with the officers. He turned the crack cocaine and remaining $1000 over to the officers.

On cross-examination, Culbreath's counsel asked Gaines if the drugs he sold when he was arrested in November 2003 were "fronted" to him. Gaines replied, "[y]es sir, from Virgil Culbreath." Culbreath's counsel indicated he had a motion, and the trial court indicated it would be entertained later. Culbreath's counsel continued to question Gaines about the drugs he purchased from Culbreath on April 30, 2004. Gaines was asked if he checked inside the package containing the crack cocaine. Gaines replied he did not, and then asked if he could say why he did not check the package. Culbreath's counsel asked him "why," and Gaines responded "[b]ecause I dealt with [Culbreath] before and I never had to check it." Defense counsel again indicated he had a motion, and the trial court stated he could make it at the proper time.

After Gaines finished testifying, counsel moved for a mistrial based on Gaines' testimony referring to previous dealings with Culbreath. In reply, the State noted Gaines testified, without objection, he told the police he knew he could buy drugs from Culbreath. Further, the State argued Gaines'

subsequent testimony was in response to questions from defense counsel and therefore the defense opened the door to the testimony. The trial court found counsel opened the door to the testimony by asking whether Gaines had drugs "fronted" to him, and then asking him why he did not check inside the package he received from Culbreath. Thus, the trial court conditionally denied the mistrial motion and instructed Culbreath's counsel he could provide the court with relevant case law the following day.

The next morning, defense counsel presented two cases in support of his request for a mistrial.[3] After reviewing the cases, the trial court denied the motion, finding the cases were distinguishable because they involved the State's attempt to introduce prior bad acts or prior crimes evidence, while the instant case involved responses to questions posed by the defense counsel.

The trial court directed a verdict for Culbreath on the proximity charge and submitted the trafficking charge to the jury. Culbreath was convicted of trafficking crack cocaine and sentenced to fifteen years incarceration. This appeal follows.

## STANDARD OF REVIEW

Whether to grant or deny a mistrial motion is a matter within the trial court's sound discretion, and the court's decision will not be disturbed on appeal absent an abuse of discretion amounting to an error of law. *State v. Council,* 335 S.C. 1, 12–13, 515 S.E.2d 508, 514 (1999); *State v. White,* 371 S.C. 439, 443–44, 639 S.E.2d 160, 162 (Ct.App.2006). A mistrial should be declared only when absolutely necessary. *Council,* 335 S.C. at 13, 515 S.E.2d at 514. In order to receive a mistrial, a defendant must show error and resulting prejudice. Id. It is only in cases of abuse of discretion which result in prejudice that this court will intervene and grant a new trial. *White,* 371 S.C. at 444, 639 S.E.2d at 162.

---

3. Culbreath presented *State v. Carter,* 323 S.C. 465, 476 S.E.2d 916 (Ct.App.1996) and *State v. Campbell,* 317 S.C. 449, 454 S.E.2d 899 (Ct.App.1994) to support his motion for a mistrial.

## LAW/ANALYSIS

■ Initially, we note that any argument by Culbreath that the trial court erred in denying his motion for a mistrial based upon a comment or question made by the solicitor is not properly presented for appeal.

■ "In order for an issue to be properly presented for appeal, the appellant's brief must set forth the issue in the statement of issues on appeal." *Langehans v. Smith*, 347 S.C. 348, 352, 554 S.E.2d 681, 683 (Ct.App.2001); *see also* Rule 208(b)(1)(B), SCACR ("Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal.").

Culbreath's appellate brief contains only one argument. The heading above the argument states, "[t]he trial court erred in refusing to grant a mistrial after the State's key witness mentioned several times prior drug dealings with appellant." While Culbreath's appellate brief recounts the question asked by the solicitor, the legal argument presented applies only to the statements made by Gaines. Culbreath provides no legal authority or supportive arguments as to any improper question asked by the solicitor.

■ It is error for the appellate court to consider an issue not properly raised to it. *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994). Therefore, this court is limited to addressing the single issue raised by Culbreath in his brief as to whether the trial court erred in refusing to grant a mistrial after Gaines mentioned prior drug dealings with Culbreath.

■ Culbreath contends Gaines' references to Culbreath's prior drug dealings were an impermissible attempt to submit evidence of prior bad acts. Further, Culbreath claims the references were prejudicial because they were shockingly similar to the charge for which Culbreath was on trial.

■ Generally, evidence of prior crimes or bad acts is not admissible to prove the crime for which the defendant is charged. *State v. Lyle*, 125 S.C. 406, 416, 118 S.E. 803, 807 (1923). Such evidence is admissible when it tends to show (1) motive; (2) intent; (3) the absence of mistake or accident; (4)

a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) the identity of the person charged with the commission of the crime on trial. *Id.* The evidence of prior crimes or bad acts must be relevant to prove the alleged crime. *State v. Campbell,* 317 S.C. 449, 451, 454 S.E.2d 899, 901 (Ct.App.1994). When the prior bad acts are "strikingly similar to the one for which the appellant is being tried, the danger of prejudice is enhanced." *State v. Gore,* 283 S.C. 118, 121, 322 S.E.2d 12, 13 (1984). "[E]ven if [the] prior bad act evidence is clear and convincing and falls within an exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *State v. Gillian,* 373 S.C. 601, 611, 646 S.E.2d 872, 877 (2007). This balancing process is reflected in Rule 403, SCRE.

Notwithstanding, a defendant may open the door to what would be otherwise improper evidence through his own introduction of evidence or witness examination. *State v. Young,* 364 S.C. 476, 485–87, 613 S.E.2d 386, 391–92 (Ct.App. 2005), *cert granted,* Shearouse Adv. Sh. No. 31 at 9 (Jan. 5, 2007) (discussing South Carolina jurisprudence regarding opening the door to otherwise inadmissible evidence). A party cannot complain of prejudice from evidence to which he opened the door. *State v. Robinson,* 305 S.C. 469, 474, 409 S.E.2d 404, 408 (1991); *Young,* 364 S.C. at 485–88, 613 S.E.2d at 391–93, *cert granted,* Shearouse Adv. Sh. No. 31 at 9 (Jan. 5, 2007).

In this case, the State did not submit any evidence regarding Culbreath's prior drug transactions and specifically instructed Gaines not to discuss prior drug transactions between him and Culbreath. The evidence at issue resulted from defense counsel's questioning of Gaines. When counsel asked Gaines whether the crack cocaine he was selling in November 2003 was "fronted" for him, Gaines replied, "[y]es sir, from [Culbreath]." Culbreath's counsel subsequently asked Gaines if he checked the package he received from Culbreath, and Gaines replied, "[n]o sir." Gaines then asked if he could state why he did not check the package. When Culbreath's counsel asked him "[w]hy," Gaines stated "[b]ecause I dealt with [Culbreath] before and I never had to check it." We find the

defense opened the door to the references made about Culbreath's prior drug dealing with Gaines. Accordingly we find the trial court did not abuse its discretion in refusing to grant a mistrial.

Therefore, the decision of the trial court is hereby

**AFFIRMED.**

HEARN, C.J., and GOOLSBY, A.J., concur.