**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Travis Lamont Gathers, Appellant.

Appellate Case No. 2022-001053

———————

Appeal From York County
William A. McKinnon, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-277
Heard May 14, 2025 – Filed August 6, 2025

———————

**AFFIRMED**

———————

Appellate Defender Sarah Elizabeth Shipe, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia; and Solicitor Kevin Scott Brackett, of York,
all for Respondent.

———————

**PER CURIAM:** Travis Lamont Gathers appeals his conviction for armed robbery and possession of a weapon during the commission of a violent crime. Gathers argues the trial court erred in: (1) admitting evidence of Gathers's role in two

subsequent, uncharged armed robberies; and (2) allowing a lay witness to provide opinion testimony during trial.  We disagree and affirm.

## FACTS

This appeal centers around three robberies.  The first occurred at a Bojangles in York County on June 28, 2020, at around 11:00 p.m.  The robber entered by breaking a glass door with a rock taken from the restaurant's landscaping.  Upon entering, he approached an employee, Devontae Gardner, brandishing a black handgun.  The robber forced the employees to the back of the restaurant where he directed them to get on the ground, and ordered the manager, Douglas Mize, to give him the money in the safe.  Mize complied, placing the money in a plastic Walmart bag provided by the robber.  The robber then walked the manager and employees to the restaurant's walk-in cooler and left.  Gardner and Mize described the perpetrator as a black man wearing a black face mask and a glove on his left hand.  Security cameras at Bojangles recorded the robbery.

On July 12, 2020, at around 11:30 p.m., a Wendy's in Fort Mill (Wendy's I) was robbed.  Larronchez Chisholm was finishing up a delivery to the restaurant when he was approached by a black man wearing a plaid shirt, khaki cargo shorts, a hat, a bandana, and sunglasses.  The man was armed with a black handgun.  He ordered Chisholm to go inside the restaurant with him and to tell the employees to give him their money.  The two entered the restaurant where Chisholm relayed the demand.  After ordering Chisholm and the employees to get on the ground, the robber directed the manager, Sheree Moore, to open the safe.  The robber fired the gun during the robbery, but no one was injured.  Once the robber received the money, he put it in a Wendy's bag and fled the scene.  Law enforcement recovered a shell casing and projectile from the scene.

On July 16, 2020, at around midnight, a Wendy's in Rock Hill (Wendy's II) was robbed.  The manager, Jacquanda Cunningham, heard "loud booms" in the dining room and noticed a window shaking.  Shortly thereafter, she saw a man run into the restaurant wielding a gun.  He forced the employees on the ground and demanded money.  Cunningham started to get money from the cash register, but the robber directed her to get the money from the safe instead.  The robber left the store with three tills from the cash registers and the money bag from the safe.  Cunningham described the robber as a black man wearing a camouflage mask, a hat, and sunglasses.  Cunningham's son, Jacquan, was also working at the restaurant that evening and identified the man as a "kind of short" black man wearing a face covering, glasses, a striped shirt, and jeans.  When law enforcement arrived on the

scene, they recovered the tills and a gun outside of the restaurant.

Investigators from York County circulated photos of the robber taken from still shots of the Bojangles security camera footage to surrounding law enforcement agencies to try to identify the Bojangles robber. Sergeant Allen Cantey with the Rock Hill Police Department "almost immediately" recognized Gathers due to a "distinct scar" on the right side of his face.

The gun recovered from the Wendy's II robbery was identified as a Smith and Wesson 9-millimeter MMP pistol. A SLED forensic firearms examiner testified that the shell casing recovered from Wendy's I was fired by the gun recovered from Wendy's II. No DNA was recovered from the Bojangles robbery. DNA evidence taken from the gun used in the Wendy's II robbery, however, matched Gathers's DNA profile. In addition to Gathers's DNA, the samples also contained DNA from other "minor contributors," but those samples were insufficient to develop a full DNA profile.

After Gathers's arrest, Jacquanda Cunningham saw a photo of Gathers and realized he had been a drive-through customer at the restaurant on the night of the Wendy's II robbery. She recognized him by the scar on his face. In addition, police executed a search warrant on Gathers's phone and discovered a picture of the Wendy's restaurant in Fort Mill (Wendy's I), taken on the same day as the robbery. They also found a photo taken from the inside of a vehicle identified as belonging to Gathers's parents. The photo showed a large amount of cash sitting on top of a white Wendy's bag in the passenger seat of the car. The photo was taken on the same day as the Wendy's II robbery, approximately thirty minutes after the robbery took place.

Gathers was indicted and stood trial for the Bojangles robbery. During a pre-trial hearing, the State sought to introduce evidence of the subsequent Wendy's robberies to prove Gathers's identity as the Bojangles robber. Over Gathers's objection, the trial court ruled the evidence was admissible pursuant to Rule 404(b), SCRE. The court found there was a logical connection between the three robberies and the probative value of the evidence in identifying the robber "strongly outweighed any unfair prejudice."

During trial, Officer Joe Wallace of the York County Sheriff's Department testified that he reviewed still photos taken from the Bojangles security footage to try to identify the make and model of the firearm used by the robber. Officer Wallace compared the still photos to stock photos and "actual guns," and identified the firearm as a Smith and Wesson MMP pistol. He was not qualified as a firearm expert. Specifically, Officer Wallace testified:

So[,] part of our investigation we would review that [security camera] video, and that's the one thing we look at is the firearm itself to see if we can tell what type of firearm we're looking for. Obviously in a photo you can't tell the caliber of the firearm but you can look at the firearm and try to tell the make or model. So[,] we took still photos from the video, looked at that firearm, compared it to numerous other firearms, different manufacturers; Smith and Wesson, Glock, Taurus, Beretta … different ones that are out there, looking at stock photos, and also looking at actual guns to see … if we thought we could figure out what it was. Looking at that we determined that we believed it to be a Smith and Wesson MMP pistol.

Gathers's counsel objected to this testimony, arguing that it was impermissible opinion testimony. The State contended that Wallace's opinion was not a scientific opinion and compared it to identifying the make and model of a car. The trial court agreed with the State and overruled the objection.

The jury convicted Gathers of both charges. He was sentenced to twenty-five years' imprisonment for armed robbery and five years for the weapons charge. This appeal followed.

**STANDARD OF REVIEW**

"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Stokes*, 381 S.C. 390, 398, 673 S.E.2d 434, 438 (2009). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.*

**DISCUSSION**

1. Admission of the Wendy's Robberies

Gathers argues the trial court erred in admitting evidence of the subsequent Wendy's robberies because no logical connection existed between the Bojangles robbery and the Wendy's robberies and because the evidence tying him to the Wendy's robberies was not clear and convincing. We disagree.

"All relevant evidence is admissible." Rule 402, SCRE.  Relevant evidence may be excluded, however, "as otherwise provided" by the South Carolina Rules of Evidence.  *Id*.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Rule 401, SCRE.

Under Rule 404(b) of the South Carolina Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" but may be admitted for a legitimate purpose, specifically "to show motive, *identity*, existence of a common scheme or plan, the absence of mistake or accident, or intent." (emphasis added).  The evidence "must logically relate to the crime with which the defendant has been charged." *State v. Beck,* 342 S.C. 129, 135, 536 S.E.2d 679, 682–83 (2000).  There must be a logical relevancy between the evidence and the purpose for which it is being introduced. *State v. Lyle,* 125 S.C. 406, 417, 118 S.E. 803, 807 (1923).  "If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime."  *Id.*  When the defendant was not convicted of the crime sought to be introduced, the evidence must be clear and convincing.  *Stokes,* 381 S.C. at 404, 673 S.E.2d at 441.  Furthermore, even if the defendant is tied to the bad act by clear and convincing evidence, there is a logical connection, and it is being introduced for a permissible purpose, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  *Id.;* Rule 403, SCRE.  "Unfair prejudice means an undue tendency to suggest decision on an improper basis."  *State v. Dickerson*, 341 S.C. 391, 400, 535 S.E.2d 119, 123 (2000).

A.  Logical Connection

Gathers argues the evidence pertaining to the Wendy's robberies is too distant in time and geographic location to be relevant to the Bojangles robbery, citing *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).  In *Lyle*, the defendant was accused of forging bad checks at a bank in Aiken.  *Id*. at 412, 118 S.E. at 805.  During trial, the State offered evidence of five other forgeries that the defendant was alleged to have committed for the purpose of establishing Lyle's identity as the forger in the Aiken case.  *Id*. at 414, 118 S.E. at 806.  Our supreme court upheld the admission of two of the five forgeries as they had occurred on the same day as the Aiken forgery and therefore refuted the defendant's alibi.  *Id*. at 418, 118 S.E. at 808.  However, the court held that three Georgia-based forgeries were inadmissible because they were too remote in time and distance from the Aiken forgeries and bore only a general similarity to the Aiken forgeries.  *Id.* at 424, 118 S.E. at 810.

In *Lyle*, the inadmissible forgery closest in time occurred nine days prior to the charged offense, and each location was well over a hundred miles from Aiken.[1] *Id.* at 413–14, 118 S.E. at 806. In addition, there was nothing about the methods or techniques used by the forger which would identify Lyle as the person who committed the Aiken forgeries. As the court stated:

> the similarity must have established such a connection between the crimes as would logically exclude or tend to exclude the possibility that the Aiken crime could have been committed by another person. There is nothing to indicate that the defendant held any monopoly of the methods and means used in passing the forged checks in Georgia, or that they were unique in the annals of crime.

*Id.* at 420, 118 S.E. at 808 (citation omitted).

In this case, eighteen days passed between the Bojangles robbery and the final robbery (Wendy's II), all were fast food restaurants, and all were less than a thirty-minute drive from one another. More importantly, the evidence relating to the Wendy's robberies was relevant to establish the identity of the Bojangles robber. DNA evidence connected Gathers to the gun found at the Wendy's II scene, which in turn matched the shell casing recovered from Wendy's I. Officer testimony and the security camera footage confirmed that the gun used in the Bojangles robbery was consistent with the gun recovered from the Wendy's robberies.

Furthermore, Jacquanda Cunningham's testimony that she recognized Gathers from his facial scar as having been a drive-through customer on the same night as the Wendy's II robbery also connected him to the Wendy's II robbery. The same scar is visible in the security camera footage of the Bojangles robbery. Finally, the photos taken from Gathers's cell phone connected him to both the Wendy's I and II robberies. Taken together, we hold the evidence of both Wendy's robberies establishes a connection with the Bojangles robbery that logically excludes the possibility that the Bojangles robbery could have been committed by another person.

---

[1] The crime charged in *Lyle* took place in Aiken, South Carolina on January 12, 1922. *Lyle*, 125 S.C. at 413, 118 S.E. at 806. The Georgia forgeries occurred on the following dates and at the following locations: November 23, 1921, in La Grange; December 30, 1921, in Athens; and January 3, 1922, in Griffin. *Id.* at 414, 118 S.E. at 806.

Our supreme court reached a similar result in *State v. Gillian*, 373 S.C. 601, 646 S.E.2d 872 (2007). In *Gillian*, the defendant and victim were involved in a contentious altercation at a party earlier in the evening, and then left the gathering together. *Id*. at 605–06, 646 S.E.2d at 874. The next morning, the victim was found dead from gunshot wounds, his body located in an alley behind a jewelry store. *Id*. at 606, 646 S.E.2d at 874. Ballistics evidence showed the markings on the bullets recovered from the murder were consistent with seven handgun manufacturers, including Taurus. *Id*. at 606, 646 S.E.2d at 874–75. At trial, the State introduced evidence that the defendant had committed two prior burglaries. The defendant's cousin testified the defendant told him he killed someone who he had lured behind a jewelry store he had previously robbed, under the guise of demonstrating how he broke into the store. *Id*. at 606, 646 S.E.2d at 875. The State also introduced evidence that the jewelry store had been burglarized approximately six months prior to the murder, and that the defendant had given an accomplice watches to pawn that were consistent with the ones reported stolen from the store. *Id*. Lastly, the State introduced evidence that the defendant had participated in a residential burglary just days before the murder and one of the stolen items had been a Taurus handgun. *Id*. at 606–07, 646 S.E.2d at 875. Our supreme court upheld the admission of the burglaries for purposes of identity. The court held the jewelry store evidence was relevant and probative as to the identity of the murderer when combined with the defendant's confession to his cousin. *Id*. Evidence of the residential burglary was found to be clear and convincing and showed the defendant was in possession of a stolen gun that was consistent with the murder weapon. *Id*. at 610, 646 S.E.2d at 877.

As in *Gillian*, the evidence from the Wendy's robberies showed Gathers in possession of a weapon consistent with the weapon used in the Bojangles robbery. We find the evidence of a man with a similar scar, robbing a fast-food restaurant in the evening, carrying the same weapon, all within close proximity and time to the Bojangles robbery created a logically relevant connection between the crimes and was probative as to the identity of the Bojangles robber.

B. Clear and Convincing Evidence

Gathers contends that the trial court erred in admitting the evidence of the Wendy's robberies because the evidence was not clear and convincing. In particular, he argues the officer's identification of the gun was not credible, the handgun used was extremely common, and the DNA evidence was explained by trial testimony that the gun had been previously "passed around" at Gathers's workplace. We disagree.

"'Clear and convincing' evidence is an intermediate degree of proof 'which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established.'" *Stokes*, 381 S.C. at 404 n.14, 672 S.E.2d at 441 n.14 (quoting *Anonymous v. State Bd. of Med. Examiners*, 329 S.C. 371, 375 n.2, 496 S.E.2d 17, 18 n.2 (1998)).

Taken together, we find the evidence that Gathers's DNA was found on the Wendy's II gun, the ballistic evidence that the Wendy's II gun fired the projectile recovered from Wendy's I, the incriminating photos on Gathers's cell phone of the crime scene and of cash in a Wendy's bag, taken on the same dates as the robberies, along with Jacquanda Cunningham's testimony she recognized Gathers as being at Wendy's II the same evening as the robbery, constituted clear and convincing evidence that Gathers committed the Wendy's robberies.

## C. Balancing Test

We agree with the trial court's conclusion that the probative value was not substantially outweighed by the danger of unfair prejudice. Because Gathers's face was partially obscured by his mask and no forensic evidence was recoverable from the Bojangles robbery, the evidence from the Wendy's robberies was highly probative as to the issue of identity. While the evidence is certainly prejudicial, as is nearly all probative evidence, we find it is not *unfairly* so.

## 2. Officer Wallace's Testimony

Gathers claims that the trial court erred in allowing Officer Wallace to improperly provide opinion testimony as a lay witness. We disagree.

While expert witnesses may give opinion testimony, lay witnesses are not permitted to state opinions based on facts not within their firsthand knowledge. *Watson v. Ford Motor Co.*, 389 S.C. 434, 445–46, 699 S.E.2d 169, 175 (2010); Rules 701, 702, SCRE. "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those . . . which (a) are rationally based on the perception of the witness, (b) are helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) *do not require special knowledge, skill, experience or training*." Rule 701, SCRE (emphasis added). This rule prohibiting lay witnesses from offering opinion testimony applies equally to law enforcement officers. *State v. Ostrowski*, 435 S.C. 364, 384–85, 867 S.E.2d 269, 279 (Ct. App. 2021). However, in some circumstances, non-expert law enforcement officers may "draw on their experiences while testifying." *Id*. at 385, 867 S.E.2d at 279. "[O]fficers may provide lay opinions based on their observations,

experience and training, but may not provide lay opinions on such matters if they did not either observe the events in question or actively participate in the investigation." *Id*.

Wallace's testimony was rationally based on his perceptions, were helpful for determining a fact in issue, and did not require special knowledge, skill, experience, or training. He testified to the steps taken by him and other officers during the investigation to identify the firearm and to the conclusion that they reached. His testimony would have been helpful for the jurors as they determined whether the gun recovered from Wendy's II could have been the same one used in the Bojangles robbery. And lastly, special knowledge, skill, experience, or training was not necessary to identify an object based on its appearance. Wallace's testimony was that he and the other officers compared the gun in the security camera footage to stock images and actual guns to make an identification. Experience with firearms may have been helpful, but it certainly wasn't *required*. We find no error.

## III.   CONCLUSION

We find the trial court did not abuse its discretion in admitting evidence pertaining to the Wendy's robberies, nor in allowing Officer Wallace's testimony. Accordingly, Gathers's convictions and corresponding sentences are affirmed.

**AFFIRMED.**

**THOMAS, HEWITT, and CURTIS, JJ. concur.**