673 S.E.2d 434

**The STATE, Respondent,**

v.

**Samuel STOKES, Appellant.**

No. 26603.

Supreme Court of South Carolina.

Heard May 6, 2008.

Decided Feb. 17, 2009.

Tricia A. Blanchette, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

Justice WALLER:

Appellant Samuel Stokes appeals his convictions for murder, first degree burglary, and assault with intent to kill. Appellant argues the trial court erred by admitting a State witness's prior inconsistent statement as well as evidence of prior bad acts. We find no error and therefore affirm.

## FACTS

On the night of October 6, 2003, Spartanburg police responded to a 9–1–1 call that someone had been shot at a home on Briarcliff Road. When police arrived, they found Catrina Cohen hysterical on her front porch. In the master bedroom, the police found Nicholas Thomas with his head in the lap of his mother, Brenda Nelson. Nicholas had been shot through the head; he later died at the hospital.[1]

Appellant was tried in August 2006.[2] Catrina, who was

---

1. The pathologist testified at trial that Nicholas died from a single "in and out" gunshot wound to the head.

2. A trial the previous year resulted in a mistrial due to a hung jury.

Nicholas's fiancée,[3] testified that on October 6, 2003, she was at home with Nicholas, Brenda, and her three children when intruders kicked in the door. Catrina, who was in the bedroom with Nicholas at the time, heard shots being fired, then heard someone ask where the money and car keys were, and Brenda reply, "we don't have anything." Nicholas reached for a gun from under the mattress, and Catrina hid in the closet. She could see people enter the room and go through shoe boxes, but she could not see their faces.[4] When she came out of the closet, Nicholas was lying on the floor in a puddle of blood.

The crime scene was processed that night, but police also went back to the scene on October 23, 2003. At that time, they retrieved a bullet that fell on the floor from the bedroom curtain. The bullet appeared to have blood and hair on it.

On December 21, 2003, appellant was apprehended in North Carolina while pumping gas into a rental car. The North Carolina narcotics agent who made the arrest found a .357 Ruger pistol under the front driver's side seat. A SLED firearms expert testified at trial that the bloody bullet found in Catrina's bedroom definitively matched the .357 pistol found with appellant.

### Prior Inconsistent Statement

At trial, the State called appellant's uncle, Kenneth Brown. Brown acknowledged he was serving a 62–year federal sentence for armed bank robbery. The State attempted to elicit testimony from Brown regarding a statement he made to police on November 26, 2003, after police had apprehended him. Brown admitted he was taken to the hospital by police after a car chase, but he specifically denied having a conversation at the hospital with Detective John Parris.

Brown escaped from police custody while in the hospital.[5] He was later captured in Florida and extradited to South

---

3. Catrina and Nicholas had been a couple for 13 years and had a son together.

4. At least one person had a red bandana tied around his face.

5. On the stand, Brown denied he had escaped, but instead maintained he was "mistakenly released." Detective Parris later testified that

Carolina. On January 2, 2004, while housed in the Lexington County jail, Brown gave Detective Parris a written statement. While on the stand, the State presented this three-page statement to Brown for his review; Brown, however, denied making this statement as well.[6]

Although defense counsel cross-examined Brown about his prior criminal record, he did not ask Brown any questions about his alleged statements to police.

The State subsequently called Detective Parris to the stand and offered Brown's written statement under Rule 613(b), SCRE, as extrinsic evidence of a prior inconsistent statement.

Appellant objected. During the discussion on appellant's objection—out of the presence of the jury—the trial court noted that Brown had been on the stand and available for cross-examination. Moreover, the trial court specifically offered defense counsel the opportunity to recall Brown for further cross-examination or as a witness in the defense case. Counsel rejected the trial court's offer, contending that this would force appellant to ask about the substance of the statement prior to the State bringing up the details of the statement. Counsel further argued that if he questioned Brown and he continued to deny making the statement, appellant would be denied "effective cross-examination." When the trial court again offered to produce Brown because he was still under subpoena, counsel declined, stating that Brown was "a loose cannon," and therefore counsel had "no idea what he will say once he takes that stand."

The trial court allowed the statement to be admitted as evidence and published to the jury. Essentially, Brown relayed to Detective Parris that on November 26, 2003, appellant told Brown that he (i.e., appellant) was involved in the October 6, 2003, shooting.

The statement reads as follows, in pertinent part:

On 11/26/03 I was at the BP station. I pick up [appellant] and Tony, they got into the car and once they was in,

---

Brown escaped from custody, while handcuffed, by crawling through the ceiling of a hospital restroom.

**6.** The written statement reflects that Brown's attorney was present and signed the statement as a witness.

[appellant] & Tony that is Tony ask Sam you do have everything right, and [appellant] said nigger everything is in the bookpack. Tony out the bookpack and pull out a black gun, and was playing with it, as he was checking it out. At this time [appellant] stated yes that's that nigger shit, he almost had me, but my nigger Tony took his ass out, shot his ass right in the fucking head. At this time I am wondering what are they talking about, and [appellant] say that dud[e] on [street], and I remember reading about it in the newspaper, and people was talking about it. At this time I said to them both I know you all didn't. At this time I just went into a panic state.

I remember reading about [it] in the newspaper in Oct. 2003. On the I saw them, I saw a black auto[matic] handgun and it cam[e] from the killing of the guy they killed. [Appellant] told me that the gun came from the killing of Nicklos, the nigger that they kill with the .357 gun. [Appellant] said that he almost kill him if Tony had not shot him with the .357 gun. . . .

On cross-examination, defense counsel elicited testimony from Detective Parris which explained that while Brown was in the hospital on November 26, 2003, he volunteered information that the black gun used (by Brown) in the robbery committed that same day was taken from the Briarcliff Road residence on October 6, 2003, and that appellant was the person involved in the murder there. In other words, Brown told Detective Parris that appellant was responsible for the murder, and that he (i.e., Brown) was not connected to that crime.

### Other Bad Acts Evidence

In addition to the evidence regarding the crimes committed on October 6, 2003, the following evidence associated with an October 18, 2003, shooting was also admitted at trial, over appellant's objection. The victim of this shooting, Chi Yeung, was shot in the leg. Yeung did not testify at trial, but several other witnesses connected appellant to the shooting.

First, Christina Phouachinth [7] testified that appellant left her home with Yeung, Jorge Enrique Sihavong ("K"), and

---

7. Christina is the mother of appellant's child, and appellant had been visiting the child on October 18, 2003.

Tony Nguyen.[8] K testified that he was driving a green Honda with appellant, Yeung, and Nguyen as passengers. Appellant directed him to an apartment house; when they arrived, appellant and Yeung exited the car and went into an apartment. Shortly thereafter, K was let in to the apartment by another man and saw Yeung looking "scared." K heard someone say "Don't move," and he ran out of the apartment. K testified that he heard gunshots; when he reached the car, he told Nguyen to run, and K continued running away. After a few shots, K turned around and saw appellant pointing "a big chrome shiny gun" at him. K later identified appellant to police as the person who shot at him.

In addition, Nguyen testified that he heard gunshots shortly after appellant, Yeung, and K went inside the apartment. He then saw K running out the door and heard K tell him to run for his life. Thereafter, Nguyen saw appellant pointing a pistol at K. Nguyen ran and hid in the woods, but later identified appellant to police.

As police responded to a report of gunshots fired, they were flagged down by Yeung who was driving the green Honda. Yeung's upper right leg was bleeding, and he was sent to the hospital. Just prior to Yeung's release from the hospital, a police officer was obtaining a statement from him. When Yeung got off the gurney he had been laying on, the officer found a bullet lying on the bloody sheets. This bullet was later matched to the .357 retrieved from the car appellant was filling up when police apprehended him in North Carolina.

When police searched the apartment that Yeung had been in, they found three prescription medicine bottles in appellant's name. The medicine bottles listed appellant's address as one that was different from the apartment in which they were found.

At the conclusion of testimony, the trial court instructed the jury on the "hand of one, hand of all" theory. The trial court refused appellant's request to instruct the jury that Brown's statement could be used only for impeachment.

The jury found appellant guilty of all charges. The trial court sentenced appellant to life for murder, life for burglary,

8. Tony Nguyen is **not** the same Tony referenced in Brown's statement.

and ten years for assault with intent to kill. The sentences were to run concurrent to each other, but consecutive to the sentences appellant was already serving.[9]

## ISSUES

1. Was appellant's right to confrontation violated by the admission of Brown's prior inconsistent statement?

2. Did the trial court err by admitting evidence of the October 18, 2003, shooting pursuant to Rule 404(b), SCRE?

## DISCUSSION

The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *E.g., State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *Id.*

### *1. Confrontation Clause*

Appellant argues his right to confrontation was violated when the trial court admitted Brown's written statement pursuant to Rule 613, SCRE. We disagree.

Under the rules of evidence, a prior inconsistent statement may be admitted when the proper foundation has been laid:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is advised of the substance of the statement, the time and place it was allegedly made, and the person to whom it was made, and is given the opportunity to explain or deny the statement. If a witness does not admit that he has made the prior inconsistent statement, extrinsic evidence of such statement is admissible.

Rule 613(b), SCRE. A prior inconsistent statement may be admitted as substantive evidence when the declarant testifies

---

9. Based on the events of October 18, 2003, appellant entered an *Alford* plea to three counts of assault of a high and aggravated nature.

at trial and is subject to cross-examination. *State v. Copeland,* 278 S.C. 572, 300 S.E.2d 63 (1982).

The Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. This right to confront and cross-examine witnesses "is essential to a fair trial in that it promotes reliability in criminal trials and insures that convictions will not result from testimony of individuals who cannot be challenged at trial." *State v. Martin,* 292 S.C. 437, 439, 357 S.E.2d 21, 22 (1987).

Because Brown denied the written statement while on the stand, appellant maintains he was denied **effective** cross-examination of Brown, and therefore, the admission of the written statement violated his right to confrontation. Appellant cites two of this Court's cases to support his argument: *State v. Pfirman,* 300 S.C. 84, 386 S.E.2d 461 (1989); and *Simpkins v. State,* 303 S.C. 364, 401 S.E.2d 142 (1991). The State argues that *Pfirman* and *Simpkins* are no longer good law in light of the United States Supreme Court's (USSC) decision in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[10]

In *Pfirman,* the defendant appealed from an armed robbery conviction. When he was arrested, the defendant told police that his cousin, Oliver Goff, had committed the robbery. Goff, who was also arrested, implicated the defendant as the robber, and said he (Goff) had been the lookout. The State called Goff at trial, but Goff testified he did not remember giving a statement to police. Over appellant's objection, the State was allowed to introduce Goff's statement into evidence through the testimony of the police officer who had questioned Goff upon his arrest.

This Court found the trial court had erred in admitting the statement as substantive evidence.[11] Although recognizing that "a prior inconsistent statement may be used as substantive evidence when the declarant testifies at trial and is

---

10. We granted the State's motion to argue against the precedent of these two cases.

11. This 1989 case was decided prior to the rules of evidence being adopted, and therefore, a Rule 613, SCRE, analysis was not conducted.

subject to cross-examination," the *Pfirman* Court nevertheless held that when "the declarant refuses to admit the statement imputed to him, the accused is denied **effective** cross-examination in violation of his confrontation rights." *Pfirman,* 300 S.C. at 85–86, 386 S.E.2d at 462 (citing *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)) (emphasis added).

In *Simpkins,* the Court cited *Pfirman* as support for the petitioner's ineffective assistance of appellate counsel claim. The petitioner in *Simpkins* had been convicted of first degree criminal sexual conduct with a minor, where the victim was his eight-year-old daughter. When called to the stand at trial, "[t]he child gave no response or responded negatively to the Solicitor's repeated questions regarding a sexual assault by petitioner." *Simpkins,* 303 S.C. at 366, 401 S.E.2d at 142. Defense counsel attempted cross-examination, but "received no response to questions regarding a sexual assault by petitioner." *Id.* The State then put the guardian ad litem (GAL) on the stand who testified that the child had identified the petitioner as her abuser. On appeal, counsel did not argue that the GAL's hearsay testimony was improperly admitted.

The *Simpkins* Court found admission of the GAL's testimony had been erroneous and explained as follows:

> [T]he mere fact the declarant (the victim) testified in this case does not cure the error in admitting [the GAL's] hearsay testimony. The victim refused to accuse petitioner and in effect declined to admit the out-of-court statement attributed to her by [the GAL]. Petitioner was denied **effective** cross-examination of the victim regarding this crucial evidence supplied by [the GAL]. *Cf. State v. Pfirman,* 300 S.C. 84, 386 S.E.2d 461 (1989).

*Simpkins,* 303 S.C. at 368, 401 S.E.2d at 143–44 (citation omitted, emphasis added).

Appellant therefore argues that pursuant to *Pfirman* and *Simpkins,* when a declarant refuses to admit the statement imputed to him, the accused is denied effective cross-examination in violation of his confrontation rights. We agree with the State, however, that the USSC's subsequent decision in *Crawford* sheds a new light on this Confrontation Clause issue.

■■ In *Crawford,* the USSC held that the admission of testimonial hearsay statements against an accused violates the

Confrontation Clause if: (1) the declarant is unavailable to testify at trial, and (2) the accused has had no prior opportunity to cross-examine the declarant. *Id.* at 54, 124 S.Ct. 1354. Statements taken by police officers in the course of interrogations are considered testimonial. *Id.* at 52–53, 124 S.Ct. 1354. The USSC noted, however, "that when the declarant appears for cross-examination at trial, the Confrontation Clause places **no constraints at all** on the use of his prior testimonial statements." *Id.* at 59 n. 9, 124 S.Ct. 1354 (emphasis added). The Confrontation Clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.*

In our opinion, *Crawford* clearly establishes there is no Confrontation Clause violation in the instant case because Brown was available at trial and subject to cross-examination. The trial court even offered to allow Brown to be recalled to the stand in light of its decision to admit the statement under Rule 613(b), SCRE. Appellant maintains the trial court's offer improperly shifted the burden of addressing the substance of the prior statement away from the State. He also contends it would have been ineffective for trial counsel to introduce the substance of the statement through cross-examination. Appellant, however, misses the point of what is constitutionally guaranteed by the Confrontation Clause.

The USSC explained the "purposes of confrontation" in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Confrontation:

(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury;

(2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; [and]

(3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.* at 158, 90 S.Ct. 1930 (footnote omitted).

Furthermore, as to cross-examination specifically, the Confrontation Clause "guarantees only an **opportunity** for

effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (internal quotation marks and citations omitted; emphasis in original). Indeed, the opponent's opportunity for cross-examination has been deemed the "main and essential purpose of confrontation." *Delaware v. Fensterer,* 474 U.S. 15, 19–20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (internal quotation marks and citation omitted); *see also Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (describing the Confrontation Clause's "functional purpose" as "ensuring a defendant an opportunity for cross-examination").

Cross-examination allows the accused the opportunity:

[N]ot only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); (quoting *Mattox v. United States,* 156 U.S. 237, 242, 15 S.Ct. 337, 39 L.Ed. 409 (1895))

Thus, it is the **opportunity** to cross-examine that is constitutionally protected. In the instant case, appellant had that opportunity. It is undisputed Brown appeared at trial, was available for cross-examination, and could have been recalled after the statement was admitted.[12]

Instead, appellant's trial counsel **chose** not to cross-examine on this subject. Although trial counsel apparently decided that such cross-examination would be to appellant's detriment, this does not amount to a violation of appellant's right to confrontation. *See Crawford, supra* (Confrontation Clause implicated only when declarant is unavailable); *California v.*

---

12. We note Brown was not restricted in any way from testifying, for example, by claiming protection of the Fifth Amendment. *Cf. Douglas v. Alabama,* 380 U.S. 415, 419, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (where a co-defendant invoked his Fifth Amendment privilege but the substance of his confession was nevertheless effectively admitted, the USSC held that the petitioner's inability to cross-examine the co-defendant about the alleged confession "plainly denied him the right of cross-examination secured by the Confrontation Clause").

*Green,* 399 U.S. at 161, 90 S.Ct. 1930 ("none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial"); *United States v. Owens,* 484 U.S. at 559, 108 S.Ct. 838 (the Confrontation Clause guarantees the opportunity for effective cross-examination, but "not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish").[13]

Accordingly, we hold the trial court did not err by admitting Brown's written statement. Clearly, the State laid the proper foundation for the admission of the extrinsic evidence of the written statement. *See* Rule 613(b), SCRE. The State advised Brown of the substance of the statement by showing him the three-page statement while on the stand; Brown was also advised of the time and place the statement was allegedly made, and the person to whom it was made. *Id.* Brown was given the opportunity to explain or deny the statement, and he chose to deny making the statement. *Id.* Thus, the statement was admissible under Rule 613(b), SCRE, and no Confrontation Clause violation resulted from this admission.

Finally, to the extent *Pfirman* and *Simpkins* hold that where a declarant refuses to admit the statement imputed to

---

**13.** Furthermore, other state courts faced with this issue have also concluded there is no Confrontation Clause violation where the witness is present at trial. *See, e.g., Johnson v. State,* 878 A.2d 422, 429 (Del.2005) ("The mere fact that [the witness's] recollection was limited does not make her unavailable for cross-examination for Confrontation Clause purposes."); *People v. Sharp,* 355 Ill.App.3d 786, 292 Ill.Dec. 118, 825 N.E.2d 706, 713 (2005) (where child victim "was present for cross-examination and answered defense counsel's questions, the confrontation clause places absolutely no constraints on the use of [her] prior statements"); *State v. Holliday,* 745 N.W.2d 556, 568 (Minn.2008) ("The Confrontation Clause is satisfied by a declarant's appearance at trial for cross-examination, and it is for the factfinder to evaluate a declarant's credibility."); *State v. Price,* 158 Wash.2d 630, 146 P.3d 1183, 1192 (2006) ("when a witness is asked questions about the events at issue and about his or her prior statements, but answers that he or she is unable to remember the charged events or the prior statements, this provides the defendant sufficient opportunity for cross-examination to satisfy the confrontation clause"); *State v. Nelis,* 300 Wis.2d 415, 733 N.W.2d 619, 628 (2007) (where Chief of Police testified about prior inconsistent statements of another witness who had already testified, the court held there was no Confrontation Clause violation because witness had testified at trial and it had not been shown that witness was unable to be recalled to the stand).

him, the accused is denied effective cross-examination in violation of his confrontation rights, we overrule these two cases. *See Crawford, supra.*

## 2.  Evidence of Other Crimes

Appellant also argues that the trial court erroneously admitted evidence of the October 18, 2003, shooting to prove identity.  Appellant contends the evidence was not clear and convincing and does not logically connect to the charges in the instant case.  He also argues the evidence was more prejudicial than probative.  We disagree.

■ Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith; however, such evidence may be admissible "to show motive, **identity**, the existence of a common scheme or plan, the absence of mistake or accident, or intent."  Rule 404(b), SCRE (emphasis added).  The evidence admitted "must logically relate to the crime with which the defendant has been charged."  *State v. Beck,* 342 S.C. 129, 135, 536 S.E.2d 679, 682–83 (2000).

■ Where the defendant was not convicted of the prior crime, evidence of the bad act must be clear and convincing.[14] *Id.* Nonetheless, even if bad act evidence is clear and convincing and falls within the Rule 404(b) exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  *See* Rule 403, SCRE (although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice).  "Unfair prejudice means an undue tendency to suggest decision on an improper basis."  *State v. Dickerson,* 341 S.C. 391, 400, 535 S.E.2d 119, 123 (2000).  Finally, the determination of prejudice must be based on the entire record, and the result will generally turn on the facts of each case.

---

14.  "Clear and convincing" evidence is an intermediate degree of proof "which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established."  *Anonymous v. State Bd. of Med. Examiners,* 329 S.C. 371, 375 n. 2, 496 S.E.2d 17, 18 n. 2 (1998); *accord Peeler v. Spartan Radiocasting, Inc.,* 324 S.C. 261, 266 n. 4, 478 S.E.2d 282, 283 n. 4 (1996).

*State v. Gillian,* 373 S.C. 601, 646 S.E.2d 872 (2007); *State v. Bell,* 302 S.C. 18, 30, 393 S.E.2d 364, 371 (1990).

■ Here, the evidence of other crimes stemmed from the subsequent shooting incident which occurred on October 18, 2003. The testimony from Christina, K, and Nguyen established that appellant was together with K, Nguyen, and Yeung on the night in question. The testimony of K and Nguyen demonstrated that appellant was shooting at K. Yeung, who did not testify at trial, was discovered by police with a bullet wound in his leg, and the bullet found on Yeung's hospital gurney matched the gun found in the car appellant was fueling when he was apprehended in North Carolina in December 2003. Finally, medicine bottles belonging to appellant were found in the apartment Yeung entered.

Reviewing all this evidence, we find the State clearly linked the gun that was used in the October 18, 2003, shooting to appellant. The forensic evidence positively showed that **this same gun** was used in the October 6, 2003, break-in because the bullet that fell from the curtain in the bedroom where Nicholas was shot also matched the gun. Since the victims in the instant case were unable to identify their attackers, this connection was highly probative on the issue of the identity of at least one of the intruders from the October 6, 2003, incident. Thus, the evidence from the subsequent shooting was logically related to the instant case. *See State v. Beck, supra.*

In other words, the positive identification of appellant by K and Nguyen, and the forensic evidence linking the bullet from Yeung's leg to the gun found with appellant in December 2003, connect appellant to the crimes of the instant case because the same weapon was used in both crimes. *See State v. Cheeseboro,* 346 S.C. 526, 547, 552 S.E.2d 300, 311 (2001) ("The fact that the same weapon was used in both the barbershop and cab driver murders goes to show appellant's identity as the barbershop killer.").

Appellant contends that because Yeung did not testify at trial, and therefore appellant was not specifically identified as the person who shot Yeung, the evidence failed to meet the clear and convincing standard. While the evidence did not necessarily conclusively establish appellant was the trigger man, it nevertheless did serve to connect appellant to the gun.

Because the gun was used in both the October 6 and October 18 shootings, and this same gun was found with appellant when police apprehended him, the relevant connection regarding identity was effectively made. *Id.*

Appellant further contends the prejudicial value of the evidence outweighed its probative value because it showed appellant "might be a violent person who may possess a gun." In our opinion, however, the evidence was not offered to show appellant's bad character, but rather was introduced to connect appellant to the weapon that was used on October 6, 2003, to kill Nicholas. Furthermore, although this evidence certainly was prejudicial to appellant, we find it was not "unduly" prejudicial. *State v. Beck,* 342 S.C. at 137, 536 S.E.2d at 683; *see also State v. Dickerson,* 341 S.C. at 400, 535 S.E.2d at 123 ("Unfair prejudice means an undue tendency to suggest decision on an improper basis.").

Accordingly, we hold the trial court did not err by allowing this evidence at trial.

## CONCLUSION

In sum, we affirm appellant's convictions. The trial court did not err in admitting evidence of appellant's prior bad acts because they were probative on the issue of identity. Additionally, the trial court correctly found that the admission of Brown's prior inconsistent statement did not violate appellant's right to confront his witnesses. Accordingly, we affirm.

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY, JJ., and Acting Justice JAMES E. MOORE, concur.