712 S.E.2d 446

The STATE, Appellant,

v.

**Robert Lee NANCE, Respondent.**

No. 26998.

Supreme Court of South Carolina.

Heard April 7, 2011.

Decided July 11, 2011.

Rehearing Denied Aug. 5, 2011.

---

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Senior Assistant Attorney General William Edgar Salter III, of Columbia; and Solicitor Barry Joe Barnette, of Spartanburg, for Appellant.

John D. Delgado, of Bluestein, Nichols, Thompson & Delgado, LLC, and Jonathan McKey Milling, of Milling Law Firm, LLC, both of Columbia, for Respondent.

Chief Justice TOAL.

The State appeals the trial court's grant of Robert Lee Nance's (Respondent) pre-trial motion to suppress the testimony of Robert Fraley, the victim, in Respondent's new trial after this Court granted post-conviction relief (PCR) in *Nance v. Ozmint*, 367 S.C. 547, 626 S.E.2d 878 (2006) (*Nance II*).

Mr. Fraley survived Respondent's attack in 1993 and testified at the first trial but is now deceased. Respondent argues that, because in *Nance II* this Court found he received ineffective assistance of counsel due to defense counsel's failure to subject the State's case to meaningful adversarial testing, he lacked the opportunity to cross-examine Mr. Fraley as re-

quired by the Confrontation Clause of the Sixth Amendment to the United States Constitution. Therefore, Respondent argues, the State may not read Mr. Fraley's testimony into the record as an unavailable witness under Rule 804, SCRE, because it would violate his constitutional right to confront witnesses against him.

## FACTS/PROCEDURAL BACKGROUND

The following are the facts as developed during Respondent's first trial. One very early November morning in 1993, Respondent knocked on the Fraleys' door, rousing the elderly Mr. Fraley and Violet Fraley, his wife of forty-three years, from bed. When Mr. Fraley answered the door, Respondent called Mr. Fraley by name, told him he had car trouble, and asked to use the Fraleys' telephone. Mr. Fraley, unaware that Respondent had cut the phone lines before knocking, told Respondent he could use the phone in his detached workshop. As Mr. Fraley began opening the door to hand Respondent a flashlight to light his way to the workshop, Respondent yanked the door open and repeatedly stabbed Mr. Fraley with a screwdriver as the two men struggled through the house and into the kitchen.

After Mrs. Fraley, who had come out of her bedroom during the scuffle, gave Respondent her purse and car keys, he repeatedly raped her on the kitchen floor as Mr. Fraley slumped in a nearby chair, conscious and bleeding. Respondent then stabbed Mrs. Fraley in the chest, killing her, and stabbed Mr. Fraley one final time before violating Mrs. Fraley again. Respondent finally stole the Fraleys' car and left.

Miraculously, Mr. Fraley was able to drag himself to another vehicle, drive to a neighbor's house, and contact the authorities. Police officers arrested Respondent later that morning, driving the stolen car[1] and covered in Mrs. Fraley's blood. Mr. Fraley testified at trial, and defense counsel did not cross-examine him. In addition to Mr. Fraley's testimony, the State presented physical evidence linking Respondent to the

---

1. Two other men were in the car with Respondent. One man fled and was not apprehended, but the other man was arrested. He testified that he did not know Respondent and that Respondent had picked him and the other man up on the side of the road. *Nance II*, 367 S.C. at 549, 626 S.E.2d at 879.

crimes.[2] The jury found Respondent guilty of murder, first degree criminal sexual conduct, first degree burglary, assault and battery with intent to kill, and armed robbery. He was sentenced to death on the murder charge, and received an assortment of sentences for the other charges.

This Court affirmed his convictions and sentences on direct appeal. *State v. Nance,* 320 S.C. 501, 466 S.E.2d 349 (1996). Respondent filed an application for PCR, which was granted by this Court in *Nance v. Frederick,* 358 S.C. 480, 596 S.E.2d 62 (2004) (*Nance I*), presuming prejudice under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) because defense counsel failed to challenge the prosecution's case. The United States Supreme Court granted certiorari, vacated *Nance I,* and remanded for consideration in light of *Florida v. Nixon,* 540 U.S. 1217, 124 S.Ct. 1509, 158 L.Ed.2d 152 (2004), which explained the *Cronic* presumption is rare and reserved for cases in which counsel fails to meaningfully oppose the prosecution's case. This Court again granted Respondent's PCR request, holding "there was a total breakdown in the adversarial process during both the guilt phase and the penalty phase of [Respondent's] trial." *Nance II,* 367 S.C. at 555, 626 S.E.2d at 882. This Court awarded Respondent a new trial, and the current appeal stems from this new trial. Mr. Fraley is now deceased, and the State intended to read his sworn testimony from the first trial into the record during the current trial. Respondent moved to suppress the testimony, arguing the introduction of the prior testimony would violate his rights under the Confrontation Clause because Respondent lacked the opportunity to cross-examine Mr. Fraley during the first trial. The trial court granted Respondent's motion, and this appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). This same standard of review applies to preliminary factual findings in determining the admissibility

2. In addition to a bevy of other evidence, the State presented evidence Respondent was covered in Mr. and Mrs. Fraley's blood and his semen was found on Mrs. Fraley.

of certain evidence in criminal cases. *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001).

## ANALYSIS

The State argues the trial court erred in finding a violation of the Confrontation Clause would occur if Mr. Fraley's prior testimony were introduced in the current trial. We agree.

Rule 804 of the South Carolina Rules of Evidence states that an unavailable declarant's former testimony may be admitted at a later trial if the party against whom the testimony is offered had the "opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Rule 804(b)(1), SCRE. This is the rule under which the State wishes to introduce Mr. Fraley's prior testimony. As we understand the Record and the briefs, Mr. Fraley's unavailability is not in issue, nor is Respondent's motive in developing the testimony. The sole issue is whether Respondent had the opportunity to cross-examine Mr. Fraley at the prior trial.

The accused's opportunity to cross-examine a witness against him is protected by the Confrontation Clause of the Sixth Amendment to the United States Constitution. As we explained in *State v. Stokes,* confrontation "(1) insures the witness will give his statement under oath . . .; (2) forces the witness to submit to cross-examination . . .; and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement. . . ." 381 S.C. 390, 401, 673 S.E.2d 434, 439 (2009) *(quoting California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). The Confrontation Clause "guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* at 401–02, 673 S.E.2d at 439 *(quoting United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988)) (emphasis in original). Therefore, if a defendant has the opportunity to cross-examine a witness, there is no violation of the Confrontation Clause.

Respondent argues that he was not provided with an opportunity for cross-examination of Mr. Fraley at the first trial because of his trial counsel's ineffectiveness. At the first trial, trial counsel's strategy was to not challenge guilt, but

rather to establish Respondent's mental illness. In *Nance II,* this Court found Respondent did not receive effective assistance of counsel, and that he should be awarded a new trial. In so holding, this Court found there was "a total breakdown in the adversarial process during both the guilt phase and the penalty phase" of the trial, noting eight specific reasons trial counsel was ineffective in acting as an adversary to the State. 367 S.C. at 555, 626 S.E.2d at 882. First, we found Respondent was disadvantaged because lead counsel was ill and taking medication, and co-counsel had only been practicing law for 18 months. Second, trial counsel wanted Respondent to appear in the courtroom unmedicated, but failed to inform the jail personnel. As a result of that failing, Respondent continued taking his prescribed Haldol throughout the trial. Third, during his opening argument, co-counsel told the jury that neither he nor lead counsel chose to represent Respondent, but had been appointed. Fourth, defense counsel failed to present adequately the evidence necessary to establish a guilty but mentally ill defense. Counsel did not qualify their own expert, and elicited testimony concerning Respondent's mental irregularities only after the expert had testified. Fifth, counsel presented no adaptability evidence at sentencing. Instead, the only evidence presented concerning Respondent's confinement was that he threw urine at a corrections officer. Sixth, counsel presented no mitigating social history at trial, though extensive evidence would have been available upon investigation. Seventh, the paltry mitigation presentation failed to provide any insight into Respondent's mental health. Finally, in closing argument, defense counsel called Respondent "a sick man who did sick things." *Id.* at 555–57, 626 S.E.2d at 882–83.

The circuit court judge in the current trial suppressed Mr. Fraley's testimony from the first trial, stating "[n]o more glaring deficiency exists than with Mr. Fraley's testimony" because "the only eye witness" was not cross-examined. The circuit court judge repeatedly focused on the lack of adversarial confrontation of Mr. Fraley. We find the circuit court judge placed unnecessary emphasis on the lack of cross-examination and failed to consider the valid overall trial strategy of not contesting guilt.

In *Florida v. Nixon*, a PCR appeal, the United States Supreme Court explained that defense counsel's decision not to test the prosecution's case is not always presumed ineffective assistance of counsel. 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). The circumstances in this case are similar to those in *Nixon*. The criminal defendant in *Nixon* was charged with the kidnapping and gruesome murder of a stranger he approached for help in mall parking lot. *Id.* at 179–80, 125 S.Ct. 551. At trial, defense counsel conceded the defendant's guilt and did not present a guilt phase defense, knowing the prosecution would submit overwhelming evidence of guilt of a very violent and shocking crime. *Id.* at 180–81, 125 S.Ct. 551. Instead, defense counsel focused on presenting mitigating evidence during the penalty phase to establish the defendant's mental infirmities in a bid to save the defendant from the death penalty. The defendant was convicted of murder and, despite defense counsel's efforts, received the death penalty. *Id.* at 184, 125 S.Ct. 551. On PCR, the defendant argued his counsel was ineffective for conceding guilt without his express consent. The Supreme Court recognized that although under *Cronic,* prejudice is presumed when counsel does not subject the prosecution's case to a "meaningful adversarial testing," defense counsel may validly choose to focus on the sentencing phase of a capital case and not contest guilt:

> ... [Defense counsel's] concession of Nixon's guilt does not rank as a "failure to function in any meaningful sense as the Government's adversary." Although such a concession in a run-of-the-mine (sic) trial might present a closer question, the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus. Attorneys representing capital defendants face daunting challenges in developing trial strategies, not least because the defendant's guilt is often clear. Prosecutors are more likely to seek the death penalty, and to refuse to accept a plea to a life sentence, when the evidence is overwhelming and the crime is heinous. In such cases, "avoiding execution may be the best and only realistic result possible."

Counsel therefore may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared. *Nixon,* 543 at 190–91, 125 S.Ct. 551 (citations omitted).

■ Here, Respondent argues he was deprived of his Sixth Amendment right to effective assistance of counsel during the first trial, and that introducing Mr. Fraley's testimony from the first trial into the second will perpetuate the constitutional infirmities. At the PCR hearing, defense counsel explained the decision not to cross-examine Mr. Fraley was based upon the overall trial strategy to concede guilt and attempt to establish Respondent's mental illness at the time of the crimes. Defense counsel testified that in light of the decision to focus on mitigation, nothing could be gained from antagonizing a sympathetic witness who had just given graphic and highly emotional testimony. We find the behavior Respondent complains of falls under *Nixon* as a valid, articulated strategic decision to focus on saving Respondent from a death penalty rather than futilely contesting guilt in the face of the prosecution's overwhelming evidence. Defense counsel's decision not to cross-examine Mr. Fraley was reasonable and did not amount to ineffective assistance of counsel. *See Watson v. State,* 370 S.C. 68, 72, 634 S.E.2d 642, 644 (2006) ("[W]here counsel articulates a valid reason for employing a certain strategy, such conduct will not be deemed ineffective assistance of counsel."); *Stokes v. State,* 308 S.C. 546, 548, 419 S.E.2d 778, 779 (1992). As previously explained in *Nance II,* we found eight specific grounds on which to base our finding of ineffective assistance of counsel. None of those grounds concerned defense counsel's decision not to cross-examine Mr. Fraley. Defense counsel's ineffectiveness was not in choosing not to cross-examine Mr. Fraley, or otherwise test the prosecution's case during the guilt phase, but rather was in failing to adequately present a mitigation case during sentencing. The decision to allow Mr. Fraley to leave the witness stand without cross-examination was a reasonable strategy often employed in capital cases. That defense counsel was unsuccessful at mitigating during the penalty phase does not negate the reasonableness of the approach to the guilt phase of the trial.

During the first trial, Mr. Fraley was sworn, on the witness stand, and Respondent had the opportunity to cross-examine

him as required by the Sixth Amendment. Therefore, we find defense counsel's strategic decision not to cross-examine Mr. Fraley was reasonable in light of *Florida v. Nixon* and did not give rise to a Confrontation Clause violation. *See Stokes,* 381 S.C. at 402, 673 S.E.2d at 440.

## CONCLUSION

For the above reasons, we find the circuit court erred in suppressing Mr. Fraley's testimony. As allowing the State to introduce Mr. Fraley's prior sworn testimony injects no constitutional infirmity into the trial, the circuit court is

**REVERSED.**

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. Our scope of review is limited to determining whether the trial court's decision to suppress the prior testimony was an abuse of discretion, that is, to determine whether that ruling was without evidentiary support or controlled by an error of law. *State v. Wright,* 391 S.C. 436, 706 S.E.2d 324 (2011). Finding no abuse here, I would affirm.

In *Nance v. Ozmint,* 367 S.C. 547, 626 S.E.2d 878 (2006) (*Nance*), we granted respondent post-conviction relief (PCR), citing *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) and *Florida v. Nixon,* 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), stating:

In light of the recent holding in *Nixon,* we believe the present case represents one of the rare cases where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." Moreover, counsel did not act as an adversary to the prosecution's case, but instead helped to bolster the case *against* his client.

*Nance* at 553, 626 S.E.2d at 881 (emphasis in original).

We continued, finding that the trial, "in its entirety," demonstrated "a total breakdown in the adversarial process during both the guilt phase and the penalty phase" such that Nance was presumed to have suffered prejudice requiring a new trial.

*Id.* at 555, 626 S.E.2d at 882. We emphasized "the desultory manner in which defense counsel tried this case," *id.* and reiterated that counsel "failed to 'function . . . as the government's adversary,' " acting instead "to reinforce the case against his client" while "abandon[ing] his role as defense counsel." *Id.* at 557–558, 626 S.E.2d at 883.

The majority finds error in the trial court's focus on the lack of cross-examination of Mr. Fraley in determining whether that testimony should be barred, choosing to rely instead on counsel's "valid overall trial strategy of not contesting [Nance's] guilt." In my opinion, while this could be a valid strategy in isolation, this Court as well as the circuit court is bound by our finding in *Nance* that counsel's performance during the guilt phase of the trial "further bolster[ed] the prosecution's case against [Nance] rather than providing him with a defense." *Nance,* 367 S.C. at 558, 626 S.E.2d at 883. The majority exceeds the scope of review when it supplies a trial strategy to lawyers who had none.

In my opinion, the majority also errs when it reverses the circuit court's suppression decision that respondent was denied "an opportunity for **effective** cross-examination...." *State v. Stokes,* 381 S.C. 390, 401–2, 673 S.E.2d 434, 439 (2009) *citing United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (emphasis supplied), by reading this Confrontation Clause jurisprudence merely to require "an opportunity for cross-examination." As the majority rightly points out, the Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* Nonetheless, the circuit court's finding that admitting Mr. Fraley's trial testimony would violate respondent's Confrontation Clause rights because he had an inadequate opportunity to cross-examine the witness at that proceeding is supported by the evidence. The circuit court found that respondent effectively had no representation at his first trial, a finding amply supported by our opinion in *Nance* which held not only that respondent's "counsel failed to provide an adversarial challenge to the prosecution" but that they actively aided the State's case against him. *Nance,* at 557–558, 626 S.E.2d at 883.

I would find no abuse of discretion in the suppression of Mr. Fraley's trial testimony, *State v. Wright, supra,* and would therefore affirm.