# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Michael Cliff Eubanks, Appellant.

Appellate Case No. 2018-001684

---

Appeal from Laurens County
Frank R. Addy, Jr., Circuit Court Judge

---

Opinion No. 5933
Heard April 13, 2021 – Filed August 10, 2022

---

### AFFIRMED

---

E. Charles Grose, Jr., of Grose Law Firm, of Greenwood,
for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., both of Columbia, and Solicitor David Matthew
Stumbo, of Greenwood; all for Respondent.

---

**MCDONALD, J.:** Michael Cliff Eubanks appeals his convictions for first-degree, second-degree, and third-degree criminal sexual conduct (CSC) with a minor. Eubanks raises several evidentiary errors; he further argues the circuit court erred in denying him a continuance, failing to discharge a juror, and declining to charge second-degree assault and battery as a lesser included offense of CSC with a minor. Finally, Eubanks asserts he is entitled to a new trial due to highly

prejudicial statements in the State's closing argument and under the cumulative error doctrine. We affirm.

**Facts and Procedural History**

The minor's mother (Mother) married Josh Lyons in 2000. Together, they had two children—a son (Brother) and two years later, a daughter (Child). Lyons left the family when Mother was seven months pregnant with Child, and he has not been involved in his children's lives. Mother met Eubanks in 2009, married him in 2010, and moved with her children into Eubanks's home. Eubanks has two daughters from a previous marriage, and Mother and Eubanks have one child together, B.E.

Eubanks began inappropriately touching Child when she was six years old; the abuse lasted until she disclosed it at age twelve. Child first realized Eubanks's behavior was inappropriate when she was eight years old. She recalled Eubanks took her to the couch, pulled down both their pants, and touched his genitals to hers while she was half asleep. Brother recalled that when Child was eight years old, he saw Eubanks go into the bathroom with her, and he stayed in the bathroom with her for twenty minutes. Child testified Eubanks often touched her chest, buttocks, and genitals with his hands and mouth, and he made her touch his genitals. The abuse eventually progressed to vaginal and anal intercourse.

Child, Mother, Brother, and A.E. (Eubanks's biological daughter) all testified Eubanks gave Child more attention than the other children, which resulted in family arguments. Eubanks's preferential treatment included giving Child lunch money even though school lunch was free, taking her places with him, and discussing his marital problems with her. Brother and A.E. also testified about Eubanks's "weird" touching of Child. Brother described this touching as mainly "grabs on the butt." A.E. saw Eubanks "touching her butt" and "would see them up under the covers [of a bunk bed] with each other."

In November 2013, Mother was involved in a serious car accident; she broke her neck in multiple places and severed nerves on the left side of her body. Mother had a difficult time after her subsequent spinal and neck surgery—she was unable to work, and she and Eubanks began to argue.

From November 2014 to April 2015, Child attended counseling sessions because she was having anger issues and had stopped bathing and eating. She also suffered lower grades, nightmares, and an inability to focus. Child explained she believed

Eubanks would stop touching her if she was "nasty" or if he could not look at her in the bathroom.  During this time, she almost disclosed the abuse to a counselor but was afraid because she did not know the counselor very well.

In April 2016, Mother, Eubanks, Child, Brother, and B.E. moved in with Mother's parents due to financial issues.  Eubanks resumed the abuse about a week after the family's move.  Child testified Eubanks abused her in a bedroom and in the barn.  Child and Eubanks spent a lot of time together in the barn, and he rarely invited Brother or his daughters to join him there.  A.E. thought it was strange that Eubanks often took Child to the barn with him but did not generally invite the other children to the barn.  Child described how Eubanks would block the barn door with a piece of wood and take their pants off.  Eubanks would then pull her onto his lap in a chair behind a dollhouse and "wiggle" her on his lap.  At times, he ejaculated on the chair and the floor.  Child stated he "used his boy part" on her in the barn "quite a few times."  After Child disclosed the abuse, she and her family destroyed the chair with a hammer and burned it in a bonfire.

In May 2017, Brother attended a counseling session with Dr. Kimberly Little at Gilchrist Consultation Center.  During this session, Brother discussed the family dynamic, including Child's role as a "peacekeeper" between Mother and Eubanks.  Dr. Little was concerned about Child's wellbeing and asked Mother to bring her in for a session.  During her session with Dr. Little, Child disclosed the sexual abuse.  Dr. Little then notified law enforcement and the South Carolina Department of Social Services (DSS).  Child testified she disclosed the abuse to Dr. Little because she believed she could trust her because Brother trusted her.

Deputy Ronald Richey of the Laurens County Sheriff's Office (LCSO) received Dr. Little's report.  After Deputy Richey spoke with Child, he notified DSS and the LCSO investigations department.  While Deputy Richey was at the Gilchrist Center taking a report in Child's case, Eubanks unexpectedly showed up with his mother and attempted to enter the building.[1]

On May 17, 2017, LCSO Investigator Jared Hunnicutt was assigned to the case.  After reviewing Deputy Richey's report, Investigator Hunnicutt met with Child and Mother; he then met with Eubanks to discuss the allegations.  According to

---

[1] The circuit court sustained the defense's objections to much of Deputy Richey's testimony about Eubanks's tracking of Mother's car to the Gilchrist Center; however, Richey explained Eubanks "was wanting to go inside.  I told him it's best to sit in the parking lot right now."

Investigator Hunnicutt, Eubanks claimed he was unsure if anything had happened, and if anything had occurred, it happened while he and Child were asleep in a bed together. During the meeting, Eubanks provided a written statement in which he wrote, "I have no clue what goes on when I sleep. I'm not saying that I did or didn't while I was asleep."

After his meeting with Eubanks, Investigator Hunnicutt contacted Mother to advise her of the investigation's progress. Mother reported that she told Eubanks there was a "nanny cam" in the home or barn area, even though there really was no hidden camera. Investigator Hunnicutt then met with Eubanks again. At this meeting, Hunnicutt "advised him that his stepdaughter said that inside the barn property was where this—these allegations occurred. I slipped the DVD across the table to him and insinuated that I had footage of the act." Eubanks then responded that he and Child were in the barn tearing apart pallets when she sat on his lap in a chair and "started grinding her buttocks into his leg and penis and that it lasted for a few minutes and—until he ejaculated into his pants." Eubanks said he knew this was wrong, and he tried to push her off, but he was scared and panicked and did not know what to do or say. He claimed this was the only time this ever happened. Following Eubanks's completion of a written statement, Investigator Hunnicutt charged him with third-degree CSC with a minor.[2]

Child participated in a forensic interview and medical evaluation. Dr. Lyle Pritchard observed she was underweight and recommended she see another physician for evaluation of a possible eating disorder.

A jury found Eubanks guilty of first-degree, second-degree, and third-degree CSC with a minor. The circuit court sentenced Eubanks to twenty-five years for first-degree CSC with a minor and fifteen years for third-degree CSC with a minor, to be served concurrently. Eubanks received fifteen years for second-degree CSC with a minor, suspended on time served, and five years' probation, to run consecutively to his first-degree sentence. The circuit court also ordered Eubanks to register as a sex offender upon his release. The circuit court denied Eubanks's motion for a new trial.

---

[2] The grand jury ultimately indicted Eubanks for first-degree, second-degree, and third-degree CSC with a minor.

**Standard of Review**

"The trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion." *State v. Makins*, 433 S.C. 494, 500, 860 S.E.2d 666, 670 (2021) (quoting *State v. Price*, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.* (quoting *State v. Douglas*, 369 S.C. 424, 429–30, 632 S.E.2d 845, 848 (2006)).

**Law and Analysis**

**I. Therapy and Post-Traumatic Stress Disorder**

Eubanks objected to the admission of therapist Samantha Black's testimony regarding her treatment of Minor, including the type of therapy she provided and the goals of her treatment, and the admission of psychiatrist Eman Sharawy's diagnosis of post-traumatic stress disorder (PTSD). Eubanks argues the circuit court erred in admitting the testimony of these witnesses because their opinions that Child suffered a significant traumatic event and required treatment for "the psychological ramifications of the abuse" improperly vouched for the victim's credibility. Eubanks further contends this testimony should have been excluded under Rule 403, SCRE.

Black testified she worked as a therapist at Beyond Abuse, where she performed assessments and therapy with children who have been abused. Black first met with Child on June 14, 2017, and "got her background, history, family, abuse allegations, symptoms, and then we did assessment measures." Based on her assessment, Black provided Child with trauma focused cognitive behavioral therapy. Black explained the goals of such therapy are to learn coping skills, change thought distortions, and complete a trauma narrative. In the trauma narrative, the patient identifies three incidents: the first, the worst, and the last. The purpose of the trauma narrative is to "focus on their thoughts . . . what are they thinking as a result of the trauma to get rid of any distortions that they have [like] thinking that it's their fault." The circuit court admitted into evidence a redacted version of Child's trauma narrative.

Dr. Sharawy, medical director of the Beckman Center, was qualified without objection as an expert in child and adolescent psychiatry. Dr. Sharawy described her duties at the mental health center as meeting with patients, performing diagnostic assessments, prescribing medication, and supervising treatment teams,

including therapists.  Dr. Sharawy defined and explained common symptoms of PTSD.  She noted seventy to eighty percent of patients at the Beckman Center have experienced some sort of trauma and a large percentage of those are diagnosed with PTSD.

Dr. Sharawy met with Child on August 31, 2017, and diagnosed her with PTSD based on this session and her review of Black's therapy notes.  She testified Child exhibited typical symptoms of PTSD, such as anxiety, avoidance, nightmares, "intrusive thoughts and recollections of the traumatic events," depressive symptoms, low mood, erratic appetite, poor sleep, and poor concentration.  Dr. Sharawy prescribed medication and recommended Child continue participating in trauma focused cognitive behavioral therapy.  In their testimonies before the jury, neither Black nor Dr. Sharawy connected Child's PTSD to sexual abuse.

### A.  Vouching

"The assessment of witness credibility is within the exclusive province of the jury." *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012).  "[A] witness may not give an opinion for the purpose of conveying to the jury—directly or indirectly—that she believes the victim." *Briggs v. State*, 421 S.C. 316, 324, 806 S.E.2d 713, 717 (2017).  "Specifically, it is improper for a witness to testify as to his or her opinion about the credibility of a child victim in a sexual abuse matter." *State v. Kromah*, 401 S.C. 340, 358–59, 737 S.E.2d 490, 500 (2013).  A witness should avoid statements:

> • expressing "a direct opinion as to a child's veracity or tendency to tell the truth;"

> • indirectly vouching for the child's believability, such as a statement that "the interviewer has made a 'compelling finding' of abuse;"

> • indicating "to a jury that the interviewer believes the child's allegations in the current matter; or"

> • providing "an opinion that the child's behavior indicated the child was telling the truth."

*Id.* at 360, 737 S.E.2d at 500.

In *Makins*, our supreme court held the testimony of Kristin Rich, the minor victim's therapist, did not improperly bolster the victim's testimony. 433 S.C. at 505, 860 S.E.2d at 672. The court noted:

> Rich never testified she advised Minor about the importance of being truthful, never testified directly as to Minor's truthfulness, and never opined Minor's behavior indicated truthfulness. While Rich was allowed to confirm she treated Minor, she was not allowed to explain why she was treating Minor, detail her treatment of Minor, or testify as to her diagnosis of Minor. Rich only addressed the circumstances of Minor's disclosure of abuse and the drawing Minor produced in therapy.

*Id.* at 503, 860 S.E.2d at 671.

Based on *Makins*, we find the circuit court acted within its discretion in finding Black's testimony did not improperly vouch for Child's credibility. Although she testified she provided Child with trauma focused cognitive behavioral therapy, she specifically noted a trauma narrative is "not investigative at all. It's purely therapeutic and it's just to help them move on with their life to get past the trauma." Black did not testify that she believed Child, nor did she testify that she told Child to be truthful. Even though Black testified she provides therapy for children who have been abused, she made no statements regarding whether Child's trauma was the result of abuse nor did she reference sexual abuse or the specific characteristics and behaviors of sexual abuse victims.[3]

Dr. Sharawy's testimony did not reference sexual abuse, and she did not vouch for Child's credibility or otherwise violate *Kromah*. She testified she diagnosed Child with PTSD based on her one-hour session with Child and her review of Black's notes, and she described behaviors consistent with a diagnosis of PTSD. Dr. Sharawy explained PTSD was the result of a "significant traumatic event" and not simply stress in an individual's life. However, she did not testify as to any specific traumatic event as precipitating Child's PTSD. Nor did she testify as to the full diagnosis reflected in her notes, which was "post-traumatic disorder secondary to

---

[3] The State presented a separate "blind witness" as its expert in child abuse dynamics. This witness testified about the ways children disclose abuse, delayed disclosure, grooming, and typical characteristics and behaviors of child victims of sexual abuse.

child abuse." Accordingly, we find Dr. Sharawy's testimony that she diagnosed Child with PTSD, without more, did not constitute improper vouching.

### B. Rule 403

"A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in exceptional circumstances." *State v. Brooks*, 428 S.C. 618, 635, 837 S.E.2d 236, 245 (Ct. App. 2019) (quoting *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014)). "The appellate court reviews the circuit court's Rule 403 ruling 'pursuant to the abuse of discretion standard and [is] obligated to give great deference to the [circuit] court's judgment.'" *Id.* (alterations in original) (quoting *Collins*, 409 S.C. at 534, 763 S.E.2d at 28).

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. "Expert testimony on rape trauma may be more crucial in situations where children are victims. The inexperience and impressionability of children often render them unable to effectively articulate the events giving rise to criminal sexual behavior." *State v. White*, 361 S.C. 407, 414–15, 605 S.E.2d 540, 544 (2004) (finding no error in circuit court's allowing testimony of psychotherapist who counseled victim and was qualified as an expert in PTSD and assessment and treatment of sexual abuse; the court noted the "purpose of rape trauma evidence is to prove the elements of criminal sexual conduct since such evidence may make it more or less probable the offense occurred").

"'Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'" *State v. Gilchrist*, 329 S.C. 621, 630, 496 S.E.2d 424, 429 (Ct. App. 1998) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). "[T]he determination of prejudice must be based on the entire record, and the result will generally turn on the facts of each case." *State v. Stokes*, 381 S.C. 390, 404, 673 S.E.2d 434, 441 (2009).

We find the circuit court acted within its discretion in finding the probative value of the testimony of these witnesses was not substantially outweighed by the danger of unfair prejudice under Rule 403. The testimony of each was probative to show Child suffered some trauma and to refute Eubanks's contention that nothing

happened, or that if anything inappropriate happened, it happened while both were asleep. *See White*, 361 S.C. at 415, 605 S.E.2d at 544 (holding treating therapist's testimony that victim's symptoms were consistent with suffering a recent trauma was probative to refute the defendant's contention that the sex was consensual and to prove a sexual assault occurred). As discussed above, neither Black nor Sharawy testified about the specific trauma that caused Child's PTSD or precipitated her need for therapy. Based on the record as a whole, we find the circuit court did not err in evaluating the relative probative value and prejudicial effect of this evidence. *See Stokes*, 381 S.C. at 404, 673 S.E.2d at 441 ("[T]he determination of prejudice must be based on the entire record, and the result will generally turn on the facts of each case.").

## II. References to Pornography

Eubanks argues the circuit court erred in allowing the State to question Child on redirect about Eubanks's "enormous tub of pornography" after he cross-examined her about the titles of two iPhone internet searches. Eubanks contends the testimony was irrelevant under Rule 401, SCRE; inadmissible character evidence under Rule 404, SCRE; and violative of Rule 403, SCRE, as the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

"A party may introduce otherwise inadmissible evidence in rebuttal when an opponent introduces evidence as to a particular fact or transaction." *State v. Heyward*, 426 S.C. 630, 636, 828 S.E.2d 592, 595 (2019). "Testimony in response must be 'proportional and confined to the topics to which counsel had opened the door.'" *Id.* at 637, 828 S.E.2d at 595 (quoting *Bowman v. State*, 422 S.C. 19, 42, 809 S.E.2d 232, 244 (2018)). "A trial court's determination that a party has opened the door to the introduction of otherwise inadmissible evidence is within the sound discretion of the trial judge and is reviewed for abuse." *Id.* at 636, 828 S.E.2d at 594.

Pretrial, the State indicated it would not seek to introduce evidence of Eubanks's pornography collection, including evidence related to pornography found on his cell phone. Yet, Eubanks asked Child on cross-examination if she mentioned in her forensic interview that she had seen a pornographic video on Eubanks's phone. Child responded that she had seen the search terms "Birthday Sex" on Eubanks's iPhone in his YouTube video search history. She clarified she did not see this video itself, only the YouTube search for it. However, Child admitted she had watched a pornographic movie and films on Eubanks's phone when she was younger. She also admitted that she told the forensic interviewer that Eubanks

showed her a video called "step-dad having fun with daughter" on his phone. Child explained she did not tell her mother about later videos she watched with Eubanks on his phone "[b]ecause that's when he was doing the physical things."

On redirect, the State asked Child if she saw Eubanks watching pornographic videos on more than one occasion. Child testified he watched videos by himself, or he would lie beside her in bed and watch them, and that he also showed her videos on the television in the house. Eubanks objected to Child's statement that Eubanks kept pornographic material in a storage tub in a storage building, arguing her testimony that she saw a video on his cell phone did not open the door to questions about other pornographic material Eubanks might legally watch or possess. The circuit court found the State's questioning about the storage building pornography was appropriate on redirect because on cross, Eubanks elicited testimony from Child about pornography when he asked her about the cell phone video in an effort to imply he never showed Child pornography.

In admitting the redirect testimony on the sole basis that it found Eubanks opened the door, the circuit court did not address the relevance of the evidence under Rule 401 or its admissibility (or inadmissibility) as character evidence under Rule 404. Accordingly, we find these arguments—raised for the first time on appeal—are not preserved for our review. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."). However, we find the circuit court erred in finding Eubanks opened the door to Child's testimony on redirect about the pornography Eubanks kept in the storage building. Eubanks's cross-examination inquiries about the internet searches and the State's subsequent question on redirect about the tub of videos addressed two separate matters. *See State v. Simmons*, 430 S.C. 1, 15, 841 S.E.2d 845, 852 (2020) (reiterating that our supreme court will not condone "a thinly-veiled attempt to show propensity by way of the open-door doctrine" (quoting *Heyward*, 426 S.C. at 637, 828 S.E.2d at 595)); *Heyward*, 426 S.C. at 637, 828 S.E.2d at 595 (requiring a proportional response confined to the topics on which the door has been opened).

Despite this, we find Eubanks was not prejudiced by the admission of this testimony because Child testified Eubanks never showed her the videos from the storage building. Child had already testified Eubanks showed her "dirty" videos on his iPhone and on the television in his bedroom, and the jury already knew Eubanks watched pornography on his own and in the presence of Child. Thus, any error in admitting the references to the videos Eubanks kept in the storage building

was harmless. *See State v. Tapp*, 398 S.C. 376, 389, 728 S.E.2d 468, 475 (2012) ("No definite rule of law governs this finding [of harmless error]; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it 'could not reasonably have affected the result of the trial.'" (quoting *State v. Mitchell*, 378 S.C. 305, 316, 662 S.E.2d 493, 499 (2008))).

## III. Eubanks's Testimony about Internet Searches

Eubanks next contends the circuit court erred in allowing the State to cross-examine him about his internet searches for adult pornography because such questioning was not relevant under Rule 401, resulted in the admission of inadmissible character evidence under Rule 404, and was unfairly prejudicial under Rule 403, SCRE.

When the State asked Eubanks about his sexual interests and attractions, Eubanks's counsel objected as to relevance. The circuit court found Eubanks opened the door to the State's questioning as to whether he had performed internet searches for "young looking girls" when he testified he did not intend to become aroused when Child "wiggled" on his lap. However, the circuit court sustained Eubanks's objection to the State's questioning regarding Eubanks's familiarity with specific sites based on data from his cell phone. Thereafter, the State asked Eubanks if he had searched the internet for "young looking girls," and he responded, "I have done searches." Later, he admitted he was attracted "to young girls, but over the age of 18."

We find Eubanks's testimony that he did not intend to become aroused by Child's wiggling on his lap did not open the door to the State's questioning about his internet searches related to "younger looking girls" because these acts do not arise from the same fact or transaction. *See Heyward*, 426 S.C. at 637, 828 S.E.2d at 595 (requiring a proportional response confined to the topics on which the door has been opened). Nevertheless, we find any error harmless. Child had already testified as to Eubanks's search for a "Birthday Sex" video and his showing her a video called "step-dad having fun with daughter." Thus, even if the circuit erred in finding Eubanks opened to the door to the State's questioning about his internet searches, he was not prejudiced by this.

## IV. Courtroom Demonstration

Eubanks further argues the circuit court erred in allowing the State to call him down from the witness stand to demonstrate how Child wiggled on his lap. We find this error unpreserved.

Eubanks claimed his relationship with Child was a normal father-daughter relationship and denied inappropriately touching her. Eubanks testified he did not tell Child to sit on his lap in the barn and he was embarrassed about what happened. During his testimony, the State asked Eubanks to step down and show the jury how Child wiggled on his lap. Eubanks objected:

> [Eubanks]: Your Honor, I don't—I don't know if this is a proper demonstration even because it's—having never heard of it before.
>
> [The State]: I want to see it demonstrated.
>
> THE COURT: If he's able to pull it off, then he's able to pull it off. Let's see if he can do it. Go ahead.

Eubanks did not argue before the circuit court that this demonstration was "inflammatory and prejudicial," as he now asserts on appeal, and we find this general objection at trial was insufficient to put the circuit court on notice of the grounds for his argument. *See State v. Jennings*, 394 S.C. 473, 481, 716 S.E.2d 91, 95 (2011) ("An objection must be made on a specific ground.").

## V. The State's Closing Argument

Eubanks next asserts he is entitled to a new trial because the State's closing argument was improper and highly prejudicial. Eubanks admits he did not contemporaneously object to the statements he now challenges but argues a narrow exception to our preservation rules permits an appellate court to consider such "dehumanizing" statements. We disagree.

Eubanks contends the following aspects of the State's closing arguments were improper and inflammatory:

> • "Do y'all remember Mitchell [sic] twerking Eubanks? He's not here today. I looked for him after his examination yesterday. It was pathetic. I looked for him. I wanted to talk to him but he was out the door."

- The State's "mocking" of Eubanks about his liking the articles in his pornographic materials, his favorite "story lines," and his sexual interests.

- The State's references to Eubanks as "grinning Cliff" and "smirking smiling Eubanks."

"In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal." *Dunbar*, 356 S.C. at 142, 587 S.E.2d at 693–94. "[E]ven in the absence of a contemporaneous objection, a new trial motion should be granted in flagrant cases where a vicious, inflammatory argument results in clear prejudice." *Toyota of Florence, Inc. v. Lynch*, 314 S.C. 257, 263, 442 S.E.2d 611, 615 (1994). Yet, our supreme court later added, "*Toyota* and the line of cases preceding it concern abuse of a witness or litigant. Accordingly, we now clarify that our holding in *Toyota* excuses the failure to make contemporaneous objection only where the challenged argument constitutes abuse of a party or witness." *Dial v. Niggel Assocs., Inc.*, 333 S.C. 253, 259, 509 S.E.2d 269, 272 (1998). The court further clarified in *Dial* that "[u]nder *Toyota*, the issue of inflammatory argument must be raised to the trial judge by way of post-trial motion to preserve the issue for appeal." 333 S.C. at 257, 509 S.E.2d at 271.

Eubanks did not object during the State's closing argument, nor did he raise this issue in his posttrial motion for a new trial. Thus, we find Eubanks's challenges to the State's closing argument are not preserved for our review. *See State v. Young*, 364 S.C. 476, 494, 613 S.E.2d 386, 395–96 (Ct. App. 2005) (noting that under *Toyota*, flagrant, abhorrent conduct toward a party or witness must be raised to the trial court by way of a post-trial motion, and issue was not preserved because the appellant failed to do so), *aff'd as modified on other grounds*, 378 S.C. 101, 661 S.E.2d 387 (2008).

## VI. Motion for a Continuance

Eubanks contends the circuit court erred in denying his request for a continuance to find an expert to analyze his damaged iPhone, which he produced a week before trial began. He further asserts the court erred in denying him a mid-trial continuance for him to call his physician, Dr. Joanne Brownlee, to testify about a medical report he sought to introduce.

"The trial court's denial of a motion for a continuance will not be disturbed on appeal absent a clear abuse of discretion." *State v. Wrapp*, 421 S.C. 531, 535, 808 S.E.2d 821, 823 (Ct. App. 2017) (quoting *State v. Ravenell*, 387 S.C. 449, 455, 692 S.E.2d at 554, 557 (Ct. App. 2010)). "Generally, a motion for continuance should be made at the time the underlying reason for such becomes known." *State v. Nelson*, 431 S.C. 287, 304, 847 S.E.2d 480, 489 (Ct. App. 2020).

### a. Damaged iPhone

Pretrial, and before the jury was sworn, Eubanks moved to continue the trial to allow an expert to examine his broken iPhone. The State noted Eubanks turned over the iPhone the week before trial but the phone was so severely damaged, the parties were unable to access it. Eubanks claimed he wanted to contact a cell phone expert in North Carolina to see if he could access the data on the phone.

Eubanks argued the iPhone would be important if Child testified she saw pornography on his cell phone—as she disclosed in her forensic interview. Eubanks wanted an expert to examine the iPhone so that he could show there was nothing inappropriate on it. Trial counsel was unaware that the State did not have the iPhone until a few weeks before trial. When the circuit court asked Eubanks why he had not sent the phone to the North Carolina expert himself, his counsel responded, "[W]ell, one, SLED is cheaper than the guy in North Carolina. Right? Or whoever they sent it to. Right? In all honesty, . . . I did not know they didn't get his phone from him." The circuit court denied Eubanks's request for a continuance, noting the iPhone related to a collateral matter and raising a concern about authentication of the device.

When Eubanks moved for the continuance, the State agreed it would not elicit testimony about his cell phone searches. However, Eubanks referenced the iPhone during his cross-examination of Child. Notably, Eubanks could not identify any specific information on the iPhone that might be helpful to him, other than the purported absence of pornographic internet searches. We find the circuit court did not abuse its discretion in denying Eubanks a continuance to retain an expert to access a damaged device he possessed during the months prior to trial. *See, e.g.*, *State v. Meggett*, 398 S.C. 516, 523, 728 S.E.2d 492, 496 (Ct. App. 2012) (finding circuit court did not abuse its discretion in denying defendant's motion for a continuance to test certain evidence because he "had a significant period of time to obtain the testing and his failure to do so was a result of his own inaction and not a lack of preparation time").

### b. Dr. Brownlee

Mother testified she and Eubanks had a great sex life until her 2013 accident.  She claimed Eubanks told her he was unable to achieve an erection due to problems with high blood pressure and low testosterone.

During Eubanks's testimony, he sought to introduce a medical report prepared by his physician, Dr. Joanne Brownlee.  The State had never seen the report and asserted Dr. Brownlee's testimony was necessary for the document's admission.  Eubanks claimed he did not know the report would be relevant until that day of trial.  The circuit court noted the potential authentication issue with the document and stated it would be best for Eubanks to call Dr. Brownlee to testify.  Still, the circuit court clarified Eubanks could testify about his own physical condition and what he reported to his doctor.  The circuit court briefly recessed late in the afternoon so Eubanks could contact Dr. Brownlee.  Following this recess, Eubanks testified he suffered from erectile dysfunction and low testosterone.

At the end of the day, Eubanks stated he would contact Dr. Brownlee first thing the next morning; however, the following morning, Eubanks moved for a directed verdict.  After a brief discussion, the circuit court noted, "Technically, you had not rested before you made your directed verdict motion, but you did indicate in chambers that you did not intend to call additional witnesses."  Eubanks responded, "Now that you mention that, we did contact Dr. Brownlee this morning.  Her office is closed. . . .  I would actually request the Court continue this case to Monday so that we can have Dr. Brownlee available."

We find the circuit court did not abuse its discretion in denying Eubanks's motion to continue the remainder of the trial so that Eubanks could attempt to obtain Dr. Brownlee's testimony.  Despite Eubanks's claim that he was unaware his medical condition would be relevant, he was prepared to use Dr. Brownlee's medical report at trial.  And, as the circuit court noted, because Eubanks did not provide Dr. Brownlee's name as a potential witness, there was a risk that the jury could have contained some of her patients.  Therefore, we find the circuit court acted within its discretion in declining to postpone the remainder of the trial.

## VIII.  Juror Bias

Eubanks argues the circuit court erred in failing to discharge a member of the jury, Bailey, after the juror revealed he was a realtor and had in the past sold a house to one of Child's relatives.  Eubanks also argues the circuit court erred in denying his

motion for a new trial without convening a hearing to question this juror when Eubanks learned after the trial that Bailey was "Facebook friends" with Investigator Hunnicutt and with the grandmother of a witness.

"All criminal defendants have the right to a trial by an impartial jury." *State v. Coaxum*, 410 S.C. 320, 327, 764 S.E.2d 242, 245 (2014) (quoting *State v. Woods*, 345 S.C. 583, 587, 550 S.E.2d 282, 284 (2001)).

> To protect both parties' right to an impartial jury, the trial court must conduct voir dire of the prospective jurors to determinate whether the jurors are aware of any bias or prejudice against a party, as well as to "elicit such facts as will enable [the parties] intelligently to exercise their right of peremptory challenge."

*Id.* (alteration in original) (quoting *Woods*, 345 S.C. at 587, 550 S.E.2d at 284).

"We review a ruling on a new trial motion based on a juror's alleged concealment during voir dire for abuse of discretion." *State v. Tucker*, 423 S.C. 403, 410, 815 S.E.2d 467, 471 (Ct. App. 2018). The circuit court should grant a mistrial based on a juror's concealment of information only when "absolutely necessary." *Coaxum*, 410 S.C. at 327, 764 S.E.2d at 242 (quoting *State v. Kelly*, 331 S.C. 132, 142, 502 S.E.2d 99, 104 (1998)). "In order to receive a mistrial, the defendant must show error and resulting prejudice." *Kelly*, 331 S.C. at 142, 502 S.E.2d at 104.

A new trial due to a juror's concealment during voir dire "is warranted when: (1) the juror intentionally concealed information, and (2) the information withheld would have triggered a challenge for cause or been material to a party's choice to use a preemptory challenge." *Tucker*, 423 S.C. at 411, 815 S.E.2d at 471. "[I]ntentional concealment occurs when the question presented to the jury on voir dire is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable." *Id.* (alteration in original) (quoting *State v. Galbreath*, 359 S.C. 398, 404 n.2, 597 S.E.2d 845, 848 n.2 (Ct. App. 2004)). "[A] juror who intentionally conceals is presumptively biased." *Id.* "Unintentional concealment, . . . , occurs where the question posed is ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances." *Coaxum*, 410 S.C. at 325 n.4, 764 S.E.2d at 244 n.4 (omission in original) (quoting *Woods*, 345 S.C. at 588, 550 S.E.2d at 284).

During jury selection, the circuit court read a list of potential witnesses and asked if any member of the panel was related by blood or marriage to, or had a close business or social relationship with, a potential witness. No member stood in response. Eubanks did not indicate any witnesses were omitted from the list, nor did he argue the circuit court failed to read his list of witnesses.

Bailey was the first juror selected, and Eubanks did not challenge his selection. Eubanks used eight of his ten preemptory challenges on other potential jurors. The circuit court selected Bailey to be the foreperson because he was the first juror seated.

After opening statements, Bailey realized his ex-wife was related to members of Child's biological father's family (the Lyons family). Bailey disclosed that he and his ex-wife had been divorced for eleven years but noted he was a real estate agent and had sold one of the family members a house approximately two years before the trial. Bailey averred his prior relation to the Lyons family would not affect his ability to be fair and impartial. After a bench conference, the circuit court asked Bailey to which family member he sold the house, and Bailey responded that he sold an aunt a house two years prior. The circuit court then called the rest of the jury back into the courtroom and stated, "The jury is back. I think we're good" and instructed the State to call its first witness.

Eubanks later argued he was entitled to a new trial because after the trial, he learned Bailey was Facebook friends with Investigator Hunnicutt and with a witness's grandmother. In denying the motion for a new trial, the circuit court found being a Facebook friend with someone does not necessarily rise to the level of "a close business or social relationship" and noted Bailey became friends on Facebook with Investigator Hunnicutt only after the trial had ended. The circuit court further held Bailey's Facebook friendship with a witness's grandmother was discoverable prior to trial and recognized it would be difficult to impanel a jury with "absolutely no ties" to any witnesses because Laurens County is an "interconnected community." The circuit court found a posttrial hearing was unnecessary due to its inquiry with Bailey at the beginning of the trial when the issue with the house sale arose.

First, we find Eubanks's argument that the circuit court should have excluded Bailey as a juror based on a real estate transaction involving a member of the Lyons family is likely unpreserved. After Bailey brought to the court's attention that his ex-wife was related to members of the Lyons family and that he sold an aunt a home, the circuit court asked the State and Eubanks if they had any

additional voir dire for the jury.  Eubanks stated, "Yeah," and a bench conference was held.  The substance of the bench conference was not placed on the record, and no further discussion followed at this time regarding Bailey.  However, we address the merits of this argument as the circuit court later addressed the juror issue in its order denying Eubanks's motion for a new trial.

We find the circuit court acted within its discretion in declining to remove Bailey due to his remote relationship with the Lyons family.  Bailey's initial concealment of the prior family connection was unintentional.  During voir dire, the circuit court asked if any member of the jury panel was related to a potential witness by blood or marriage or if they had a close business or social relationship with a potential witness.  When listing the witnesses, the circuit court referred to Mother by her married name, Eubanks.  Child and Brother would have been very young when Bailey was connected to the Lyons family through his ex-wife because the two divorced eleven years prior to trial.  Therefore, Bailey may not have realized the connection until he heard during opening statements that Mother's nickname was "Deanie" and that Child and Brother's father was Josh Lyons.  Mother testified Josh struggled with substance abuse and left when she was seven months pregnant with Child, and he was not involved in the children's lives.  Accordingly, Bailey's relationship with the Lyons family via his ex-wife was "so far removed in time that the juror's failure to respond is reasonable under the circumstances."  *See Coaxum*, 410 S.C. at 325 n.4, 764 S.E.2d at 244 n.4 (quoting *Woods*, 345 S.C. at 588, 550 S.E.2d at 284).  Eubanks contends he would have used a peremptory strike had he known this information before jury selection.  However, Bailey's ex-wife's relation to the Lyons family and the fact that Bailey sold a home to a Lyons aunt does not suggest he had a "close business or social relationship" with a potential witness— particularly when the person to whom he sold the home was not a witness at trial.  Significantly, Bailey told the circuit court he could be fair and impartial in adjudicating Eubanks's innocence or guilt.

Further, the fact that Bailey was a Facebook friend of Investigator Hunnicutt and the grandmother of a witness is not problematic under the circumstances presented here.  In response to Eubanks's new trial motion, the State notified the circuit court of Investigator Hunnicutt's statements that Bailey requested to be his Facebook friend after the trial concluded and that "he had no idea who the guy was."  Moreover, the fact that Bailey was a Facebook friend of an individual who did not testify does not indicate he had a "close business or social relationship" with a witness.  As there is no suggestion that Bailey deliberately concealed information during voir dire and the social media connections are tangential, we find the circuit court did not abuse its discretion in declining to replace him on the jury or in

denying the motion for a new trial without convening a hearing to further question the juror.

## IX. Lesser Included Offense

In declining to charge the jury with second-degree assault and battery as a lesser included offense of third-degree CSC with a minor, the circuit court cited the court of appeals' unpublished opinion in *State v. Hernandez* as guidance. There, the defendant argued the circuit court erred in failing to instruct the jury "regarding the lesser-included offenses of assault and battery in the first and second degrees when the offenses are lesser included offenses of CCSM [CSC with a minor] in the second degree and the evidence supported the instructions." *State v. Hernandez*, Op. No. 2018-UP-343 (S.C. Ct. App. Filed Sep. 26, 2018) at 3. This court disagreed, finding second-degree assault and battery did not satisfy the elements test for inclusion as a lesser included offense of CSC with a minor in the second degree. The court further recognized that "had the Legislature intended for assault and battery in the first and second degrees to be lesser-included offenses of CCSM, it could have so provided." *Id*. at 5.

The supreme court affirmed as modified, *State v. Hernandez*, 428 S.C. 257, 261, 834 S.E.2d 462, 464 (2019) (per curiam), but addressed whether assault and battery of a high and aggravated nature (ABHAN) is still a lesser included offense of CSC after the Legislature's 2010 codification of the assault and battery crimes. Finding ABHAN is no longer a lesser included offense of CSC subsequent to the enactment of the Omnibus Crime Reduction and Sentencing Act, the court affirmed the circuit court's denial of the charge requests. *Id.* at 261, 834 S.E.2d at 464 ("Now that the Legislature has codified all degrees of assault and battery crimes, and has particularly set forth which offenses are lesser included offenses, we no longer see the need to ignore the elements test. We now hold ABHAN is not a lesser included offense of CSC.").

Section 16-3-600(D) of the South Carolina Code (2015) provides,

> (1) A person commits the offense of assault and battery in the second degree if the person unlawfully injures another person, or offers or attempts to injure another person with the present ability to do so, and:

> (a) moderate bodily injury to another person results or moderate bodily injury to another person could have resulted; or
>
> (b) the act involves the nonconsensual touching of the private parts of a person, either under or above clothing.
>
> (2) A person who violates this subsection is guilty of a misdemeanor, and, upon conviction, must be fined not more than two thousand five hundred dollars, or imprisoned for not more than three years, or both.
>
> (3) Assault and battery in the second degree is a lesser-included offense of assault and battery in the first degree, as defined in subsection (C)(1), assault and battery of a high and aggravated nature, as defined in subsection (B)(1), and attempted murder, as defined in Section 16-3-29.

Here, the circuit court properly denied Eubanks's request to charge second-degree assault and battery as a lesser included offense of third-degree CSC with a minor because the plain language of the statute does not list third-degree CSC with a minor as one of the offenses of which second-degree assault and battery is a lesser included offense. *See* S.C. Code Ann. § 16-3-600(D)(3). As the court stated in *Hernandez*, if the Legislature had intended to classify second-degree assault and battery as a lesser included offense of CSC third with a minor, it would have provided such in the statute.

## X. Cumulative Error

Finally, Eubanks contends he is entitled to a new trial based on the cumulative errors at trial. The State argues this issue is not preserved for our review.

"The cumulative error doctrine provides relief to a party when a combination of errors, insignificant by themselves, has the effect of preventing the party from receiving a fair trial, and the cumulative effect of the errors affects the outcome of the trial." *State v. Beekman*, 405 S.C. 225, 237, 746 S.E.2d 483, 490 (Ct. App. 2013). "An appellant must demonstrate more than error in order to qualify for

reversal pursuant to the cumulative error doctrine; rather, he must show the errors adversely affected his right to a fair trial to qualify for reversal on this ground." *Id.* The cumulative error doctrine is subject to the rule that an issue must be raised to and ruled upon by the circuit court. *Id.* at 236, 746 S.E.2d at 489.

Eubanks did not raise the cumulative error doctrine before the circuit court or in his motion for a new trial. Therefore, this argument is not preserved for our review. *See Dunbar*, 356 S.C. at 142, 587 S.E.2d at 693–94 ("Issues not raised and ruled upon in the trial court will not be considered on appeal."). In any event, we find Eubanks has not demonstrated that the posited errors, even when considered together, deprived him of a fair trial. *See e.g.*, *State v. Daise*, 421 S.C. 442, 467, 807 S.E.2d 710, 722–23 (Ct. App. 2017) (noting any errors by the circuit court were not prejudicial and did not combine to affect Daise's right to a fair trial).[4]

## Conclusion

Based on the foregoing, Eubanks's convictions are

**AFFIRMED.**

**KONDUROS and GEATHERS, JJ., concur.**

---

[4] We decline to address Eubanks's request for guidance regarding the court reporter's change of employment following his trial but prior to the completion of the trial transcript. The South Carolina Appellate Court Rules provide a process for challenging the accuracy of transcripts. *See* Rule 607(i), SCACR (addressing retention of primary and backup tapes and the time for a party to challenge the accuracy of the transcript); Court Reporter Manual published by South Carolina Court Administration, https://www.sccourts.org/courtreporter/CourtReporterManual.pdf. At Eubanks's request, Court Administration conducted an independent review of the transcript and required the correction of "proofreading errors that included word misspellings and grammar, punctuation, and typographical errors." This court can provide no further relief regarding the court reporter or the transcript, and it would be inappropriate to issue an advisory opinion that does not affect the outcome of the case.